LARRY YELEY *v.* STATE OF INDIANA.

[No. 472A172. Filed August 22, 1972.]

*Phillip W. Brown,* of Shelbyville, for appellant.

*Theodore L. Sendak,* Attorney General, *Stephen J. Cuthbert,* Deputy Attorney General, for appellee.

LOWDERMILK, J.—Defendant-appellant Yeley was convicted by the court without a jury of the offense of resisting or interfering with an officer or person assisting him, which was a violation of Ind. Ann. Stat. § 10-1005(a) (Burns, 1971 Supp.) (IC 35-31-4-2) which reads as follows, to-wit:

> "Drawing weapon or committing injury upon officer or person assisting him.—Whoever shall draw, use or attempt to use a firearm, deadly or dangerous weapon, or commit a bodily injury upon any peace or police officer of this state, or upon any person assisting such peace or police officer knowing him to be such officer or person assisting such peace or police officer, while assaulting, resisting, opposing, obstructing, preventing, impeding or interfering with any peace or police officer, when such officer is arresting or attempting to arrest any person, or while such officer is engaged in the execution of any of the duties of such officer, shall be deemed guilty of a felony, and, upon conviction thereof, shall be imprisoned for a period of not less than one [1] year nor more than five [5] years, or fined not to exceed one thousand dollars [$1000] or both."

Two issues are presented for review, which are: (1) Whether there is sufficient evidence to sustain the conviction and (2) Whether there was error in overruling defendant's motion for a finding on the evidence. For the purpose of this opinion these two specifications will be grouped and treated as one.

The facts of the case are that defendant-appellant was driving his 1957 Chevrolet motor car on a country road in Shelby County, Indiana, on August 15, 1970, with the hood

standing straight up, obliterating his view except for a small opening at the bottom of the hood through which he could look out and see in front of him. A witness, Richard Cox, was meeting defendant-appellant and sounded his horn as he was approaching him and defendant-appellant pulled to the right side of the roadway and missed Mr. Cox. Mr. Cox also testified he was following Norman Murnan, Deputy Sheriff of Shelby County. The Deputy Sheriff was on a routine patrol, heading in a southwesterly direction on London Road.

The Deputy Sheriff had observed the defendant-appellant on the public highway and had observed defendant-appellant meeting the witness Cox to the rear of the Deputy Sheriff, after which the Chevrolet proceeded up the London Road to the intersection with 700 West. The Deputy Sheriff cut through the London Cemetery and cut over to 700 West and headed north behind the 1957 Chevrolet of the defendant-appellant. This car was kept in sight as it proceeded north to the Sugar Creek Addition.

The Deputy Sheriff closely followed the black Chevrolet, which continued to be driven with the hood up, when it turned on 800 North, went to the first street in the Sugar Creek Addition and turned back north.

Defendant-appellant, while driving his 1957 Chevrolet in the Sugar Creek Addition, ran a stop sign at an intersection within the addition, headed east for one block, turned back south and turned into the yard of a home in said addition.

The Deputy Sheriff turned on his red light after the 1957 Chevrolet ran the stop sign and followed said automobile until it stopped at defendant-appellant's residence. After the car stopped defendant-appellant got out of the driver's side and a woman, who was later determined to be defendant-appellant's wife, got out of the passenger's side of the car. It was at this time that defendant-appellant's wife told him the police were behind him. They had stopped in the street in front of his home.

Deputy Sheriff Murnan walked into defendant-appellant's yard and asked for his driver's license and his registration. Defendant-appellant took something out of his pocket, threw it through the open window of the car into the front seat and said, in effect, that if the Deputy Sheriff (now and at the time of the trial the duly elected Sheriff of Shelby County, Indiana) wanted the "sons of bitches" to get them himself.

The Deputy asked him again for the articles and observed a rifle laying on the back seat of the car. Yeley jerked open the passenger's door and the Deputy Sheriff was standing right beside him and told him that he was going to have to cite him for reckless driving. The Deputy then sat on the right edge of the front seat to look for the keys and registration in the glove box and again asked Yeley where they were and got the response, directed to the Deputy Sheriff and the Special Deputy Sheriff, that he would kill them, calling them a name so vile that the court will not publish it in this opinion. At that time the Deputy glanced out of the corner of his eye and the rifle was right at his head and held by Yeley. The Deputy grabbed the muzzle of the gun and a tussle ensued between them. Both men went to their knees and the Special Deputy was called, came and grabbed Yeley, who was subdued and the gun taken from him and he was handcuffed with his hands in front of him. Yeley then, while handcuffed, went to the porch of his home and was followed by the officers, and picked up a three legged metal grill and swung it at one or both of the officers.

A number of witnesses were called and testified, most of whom corroborated the evidence as above set out, although there was a dispute as to some of the evidence.

The defendant-appellant Yeley testified in his own behalf and said that he had been squirrel hunting and the gun was unloaded, which it was, and that he had had trouble with his car and that was the reason the hood was up. He further testified on cross-examination that he had been at Walnut

Grove from about noon until 7 P.M., during which period of time he had had beer and other things to drink; that during that period of time he had had as many as twelve beers to drink but that he knew what he was doing when he left Walnut Grove.

He further testified that he had seen the car following him home but did not know it was the Sheriff until he got out of his car and walked into his yard. He further said when he started into the house he was getting away from them and did not tell them he was going to get another gun and shoot them.

There was evidence of witnesses that during the scuffle over the rifle at another time the defendant-appellant threatened to kill the Deputy Sheriff and the Special Deputy Sheriff; that his language was abusive and he was loud and quarrelsome.

Defendant-appellant testified that the Sheriff at no time prior to the scuffle for the gun ever told him he was under arrest, had ever offered to put handcuffs on him, or told the defendant anything that led him to believe that he was under arrest. He testified that he was told he was under arrest after he had been handcuffed and had swung the charcoal grille at the officers. He further claimed that the arrest for reckless driving came the next day while he was in jail.

Under the above evidence, we are of the opinion that there was sufficient evidence upon all necessary elements of the offense charged to sustain the conviction.

The defendant-appellant insists that he was not arrested for the traffic violation until after the ticket was written out and handed to him and he was told he was under arrest. His authority is *Machlan* v. *State* (1967), 248 Ind. 218, 225 N. E. 2d 762. In the *Machlan* case the defendant was injured and was taken to the hospital where the officer who attended the scene of the collision saw the defendant, Machlan, being

administered to for injuries sustained in the collision, and had a conversation about an arrest. The Supreme Court, in an opinion by Judge Myers, concurred in by Judge Jackson, said they were not persuaded to conclude that an arrest was made then since the officer went into another room and made out a "ticket" which was not given to the defendant, but was given to him later after a "search" of his automobile when he was at police headquarters, where he signed it. Justice Arterburn dissented in this opinion and Justice Hunter did not participate.

In the case at bar the then Deputy Sheriff informed the defendant-appellant of the fact he was under arrest before there was an altercation over the rifle.

The then Deputy Sheriff and the Special Deputy Sheriff each had on Sheriff's regulation uniforms, the red light was flashing on their unmarked police car from the time defendant-appellant had run the stop sign in the Sugar Creek Addition, and continued to flash up to the time he stopped in defendant-appellant's front yard.

Under the circumstances, this court places little importance upon whether defendant-appellant was told he was under arrest. *Pullins* v. *State* (1970), 253 Ind. 644, 256 N. E. 2d 553.

Justice Arterburn, in *Pullins* v. *State, supra,* set forth the purpose of informing a suspect that he is under arrest and that the purpose is not to make the arrest legal but to indicate to the person being arrested that his detention is legal so that he will not resist. He further said that:

". . . In *Plummer* v. *State* (1893), 135 Ind. 308, 34 N. E. 968, the town marshal, attempting to arrest the defendant without a warrant, failed to inform the defendant of his intention, but simply attacked him. He held that under these circumstances the defendant could exercise his right to defend himself, the same as against any unprovoked attack. Here no force was employed. The reason for informing appellant he was under arrest was not present. *We further note that the fact of intent to arrest may be shown*

*by surrounding facts and circumstances.* Here a verbal statement of an intent to arrest would have been an idle ceremony. The evidence clearly shows that appellant fit the description of one of the robbers; that he had been involved in a high speed escape attempt; and that at the time of his apprehension he was lying in a cornfield, where he had covered himself with corn leaves in an effort to escape detection." (Our emphasis.)

Justice Givan, in the recent case of *Lynch* v. *State* (1972), 258 Ind. 284, 280 N. E. 2d 821, 30 Ind. Dec. 161, held that in a case where the defendant claimed no arrest occurred prior to the discovery of the items in the vehicle wherein the facts were that from the time the officer first observed the vehicle the occupants acted in a suspicious and furtive manner and:

". . . obviously took evasive action in an attempt to escape the officer's observation, even to the point of violating the law in driving on a public highway in darkness without any lights. *At the time the officer turned on his red light and spotlight stopping the appellant and his companion a valid arrest was made. Peterson* v. *State* (1968), 250 Ind. 269, 234 N. E. 2d 488, 13 Ind. Dec. 321." (Our emphasis.)

The law is well settled in this state that when the sufficiency of the evidence is raised on appeal only that evidence most favorable to the State and all logical and reasonable inferences which may be derived therefrom will be considered. *Coleman* v. *State* (1971), 257 Ind. 439, 275 N. E. 2d 786; *Gibson* v. *State* (1971), 257 Ind. 23, 271 N. E. 2d 706.

Our Supreme Court, in an opinion by Justice Prentice and handed down so late as July 11, 1972, namely, *Taylor* v. *State* (1972), 259 Ind. 25, 284 N. E. 2d 775, reaffirms the proposition above set out.

In the case of *McMinoway* v. *State* (1972), 283 N. E. 2d 553, 31 Ind. Dec. 209, Presiding Judge Robertson reiterated the rule on the sufficiency and weight of the evidence as follows:

"This Court will not weigh the evidence nor resolve the questions of credibility, but will look to the evidence most favorable to the State and the reasonable inferences therefrom which support the verdict of the trial court or jury. [Citing cases.]"

The State of Indiana relies on the case of *Easton* v. *State* (1967), 248 Ind. 338, 228 N. E. 2d 6, to support a theory on the sufficiency of the evidence that the Supreme Court and this court must weigh the evidence and determine the credibility of the witnesses to enable it to determine whether the evidence was substantial.

In *Easton, supra,* the court did say:

". . . and on appeal it is not the province or right of this Court to weigh the evidence, however, it is the duty of this Court to examine the record of the evidence to determine whether there was sufficient evidence substantial in character to support the court's finding on each of the issuable facts or elements of the crime charged beyond a reasonable doubt. . . ."

The court then quoted further from an opinion written by the eminent jurist, James A. Emmert, in the case of *Baker* v. *State* (1956), 236 Ind. 55, 138 N. E. 2d 641, on the test of substantial evidence wherein he quoted with approval from *State* v. *Gregory* (1936), 339 Mo. 133, 143, 96 S. W. 2d 47, 52 as follows:

" ' "Now since the test of substantial evidence is whether a jury reasonably could find the issue thereon, the result must depend in some measure upon the *degree of persuasion required.* In a criminal case liberty and sometimes life are involved, and there cannot be a conviction except upon a finding of guilt beyond a reasonable doubt. Necessarily, therefore, it becomes the duty of an appellate court as a matter of law to decide whether the evidence was sufficient to induce a belief of the defendant's guilt beyond a reasonable doubt in the minds of jurors of average reason and intelligence. And in resolving that question *the court* undoubtedly *can pass on the credibility* of the testimony *to*

the extent of *determining whether it was substantial* in the sense above explained. *In no other way can the rights of the defendant be protected.* It would be an *incongruous situation if the court were compelled to let a conviction stand* as being supported by evidence warranting a verdict of guilt beyond a reasonable doubt, *when for any reason made manifest on the record the court is convinced the evidence reasonably could not support a conviction." '* (Emphasis added.)"

We are of the opinion that Judge Emmert in his well chosen words did not say, as the State now contends, that courts of review have the right on the question of sufficiency of evidence to determine the credibility of witnesses and must weigh the evidence to the extent of determining whether the evidence was substantial. The rule that we cannot weigh the evidence nor can we determine the credibility of witnesses has not been changed and *Easton* v. *State, supra,* must not be considered to change that rule. In *Easton, supra,* the court said that *the court can undoubtedly pass on the credibility of the testimony to the extent of determining whether it was substantial.* This does not mean and it did not say that the court undoubtedly could pass on the credibility of the witnesses and weigh the evidence. We, therefore, hold that the rule as laid down in the recent case of *Taylor* v. *State, supra,* and *Lynch* v. *State, supra,* is still the law of the State of Indiana. (Our emphasis.)

On the second specification of error, that the decision of the trial court was contrary to law and the defendant was entitled, as a matter of law, to a finding of not guilty by the trial court, we are of the opinion that the State satisfied the burden imposed upon it and proved beyond a reasonable doubt that the defendant was guilty as charged. Therefore, the court was correct in its overruling the motion for a finding of not guilty at the conclusion of the State's evidence and was correct in overruling the defendant's motion for a finding of not guilty

at the close of all the evidence and the decision of the trial court was not contrary to law.

Judgment affirmed.

Robertson, P.J. and Lybrook, J., concur.

NOTE.—Reported in 286 N. E. 2d 183.