EDWARD A. STEWART v. STATE OF INDIANA.

[No. 1-1275A220. Filed September 22, 1976.]

*George E. Sawyer,* of Richmond, for appellant.

*Theodore L. Sendak,* Attorney General, *John P. Avery,* Deputy Attorney General, for appellee.

LYBROOK, J.—Defendant-appellant, Edward A. Stewart, appeals from his conviction of Sale of a Narcotic Drug,[1] raising the following issues for review:

---

1. At the time of the events described, the applicable statute was Ind. Ann. Stat. § 10-3520 (Burns 1956). This statute was subsequently repealed by Acts 1973, P.L. 335, § 6. The current law pertaining to controlled substances is IC 1971, 35-24.1-1-1 to 35-24.1-6-1 (Burns Code Ed.); its repeal by Acts 1976, P.L. 148, § 24 will be effective July 1, 1977.

(1) Whether the trial court erred in overruling the defendant's motion to dismiss for denial of a speedy trial.

(2) Whether there was sufficient evidence to sustain the conviction.

(3) Whether the defendant was prejudiced by the fact that a juror spoke to a witness for the State.

(4) Whether the defendant was tried by a jury of his peers.

The facts most relevant to these issues reveal that in January, 1973, the Indiana State Police Department in consort with Wayne County and Richmond Police authorities began an undercover drug investigation of the Wayne County area under the direction of Indiana State Police Trooper, Donald E. Bates. On March 29, 1973, Bates and three other police officers met with Richard L. Hale who had on prior occasions served as a drug informer. The purpose of this meeting was to prepare Hale to purchase heroin from Stewart. Hale was searched, given $100 in cash, and fitted with a transmitter so that his conversations could be monitored.

Thereafter, Hale drove directly to the YMCA in Richmond. The police officers followed in an unmarked surveillance car and parked within view of the front entrance to the YMCA.

Hale testified that he met Stewart in the lobby of the YMCA and from there they went to Room 307, where Stewart resided. Hale then counted out $100 in cash and paid that amount to Stewart. In exchange Stewart gave him a teaspoon of white powder wrapped in a foil packet, stating that the white powder was heroin. Stewart also gave Hale, as a sample, two capsules wrapped in a separate foil packet. No one else was present in the room during the transaction. Hale further testified that he and Stewart walked outside the front entrance of the YMCA. While on the front steps, Hale placed the two foil packets he had been carrying in his hand into his pants pocket. Hale then left and went directly to his car. Approximately two minutes later, Hale met the surveillance car and turned over the two foil packets to Trooper Bates.

On June 8, 1973, the Wayne County Grand Jury indicted Stewart for the Sale of a Narcotic Drug and for Possession of a Narcotic Drug. Stewart was arrested in Detroit, Michigan on November 3, 1973. Following extradition proceedings, he was returned to the Wayne County jail on April 17, 1974. A jury trial was held on July 22-24, 1975. Stewart was convicted of Sale of a Narcotic Drug and sentenced to a term of imprisonment of five to twenty years. From his conviction, Stewart appeals.

## I.

The first issue for our consideration is whether the trial court erred in overruling the defendant's motion to dismiss for denial of a speedy trial. Defendant argues that the five month delay between the filing of the indictment (June 8, 1973) and his subsequent arrest (November 3, 1973) so prejudiced his ability to defend himself that it violated his right to a speedy trial under the Indiana (Art. 1, Sec. 12) and Federal Constitutions (Sixth Amendment).[2]

Indiana Rules of Procedure, Criminal Rule 4, says in part:

*"Discharge for Delay in Criminal Trials*

(A) Defendant in jail. No defendant shall be detained in jail on a charge, without a trial, for a period in aggregate embracing more than six (6) months from the date the criminal charge against such defendant is filed, or from the date of his arrest on such charge (whichever is later) ; *except where a continuance was had on his motion or the delay was caused by his act, * * *"* (Emphasis added.)

Clearly, this Rule is not strictly on point to the case at bar, since defendant's argument involves a time period not controlled by CR. 4, however, it does provide assistance by analogy to aid in the determination of this issue.

The leading case on this issue, *United States* v. *Marion* (1971), 404 U.S. 307, has been subject to different inter-

---

2. The Sixth Amendment speedy trial guarantee is applicable to the States under the 14th Amendment. *Klopfer* v. *North Carolina* (1967), 386 U.S. 213.

pretations. The defendants in *Marion* claimed that a three year delay between the occurrence of the alleged criminal acts and the filing of the indictment violated their right to speedy trial under the Sixth Amendment. The United States Supreme Court held that the right to speedy trial does not reach this period. The guarantee has no application until the putative defendant in some way becomes an "accused". 404 U.S. at 313. Since the defendants in *Marion* had not previously been arrested or otherwise charged, that event occurred only when they were indicted. In the words of Justice White, 404 U.S. at 320:

". . . it is either a formal indictment or information or else the actual restraints imposed by arrest and holding to answer a criminal charge that engage the particular protections of the speedy trial provision of the Sixth Amendment."

Although the language quoted above appears straightforward enough, courts have disagreed over its exact meaning. The two lines of authority on when the right to speedy trial attaches are outlined below. However, the result that would obtain in the instant case is the same. Under either approach, defendant's right to a speedy trial has not been violated.

A. *Defendant's right to a speedy trial has not been violated because it does not include the time between his indictment and arrest.*

Under one line of authority, the facts in *Marion* can be distinguished from the present case. The Tenth Circuit Court of Appeals, upon similar facts, declined to include the time from defendant's indictment to his arrest. *United States* v. *Hay* (1975), 10th Cir., 527 F.2d 990, cert. denied, (1976), 96 S.Ct. 1666. In *Hay* the indictment was ordered sealed and the defendant was not available for prosecution. Because the defendant was subject to neither restraints on his liberty nor public accusation before his arrest, the *Hay* court reasoned that none of the interests protected by the Sixth Amendment were endangered during this period. 527 F.2d at 994, n. 4.

If the *Hay* approach is adopted, the measuring period in this case would not include the five month delay between defendant's indictment and eventual arrest. Stewart's indictment was also secret. At the time it was issued the applicable statute was Ind. Ann. Stat. § 9-907 (Burns 1956) which prohibits public disclosure of an indictment until the defendant is arrested. Stewart acknowledges that he did not know of the charge until his arrest. The speedy trial guarantee would not cover the period alleged in this case because, under the circumstances, none of the interests which the Sixth Amendment was designed to protect were endangered during the delay.

B. *Even if the right to speedy trial did reach the time between the filing of the indictment and defendant's arrest, defendant's right has not been violated in this case.*

The other line of authority holds that the right to speedy trial attaches when a person is arrested or when he is formally charged by indictment or information, whichever occurs earlier. Eg., *Daniels* v. *Maryland* (1976), Ct. of Special Appeals, 352 A.2d 859 at 862, n. 2, cert. denied, (June 3, 1976).

One reason for applying the speedy trial guarantee to the post-indictment, pre-arrest period, even when the indictment is secret, is suggested by the analysis in *Marion*. The United States Supreme Court in *Marion* found it unnecessary to apply the Sixth Amendment to the period preceding arrest or indictment because the relevant statute of limitations provided an adequate safeguard against any possible prejudice that might result from pre-accusation delay. 404 U.S. at 321-323. Where, as in the present case, the statute of limitations is tolled by the filing of the indictment, no safeguard will operate to prevent an unreasonable delay in executing the arrest warrant unless the speedy trial guarantee applies.

Assuming that the right to speedy trial attached at the time of this indictment the next step is to apply the *ad hoc* balancing test announced in *Barker* v. *Wingo* (1972), 407 U.S. 514. In determining whether the right has been denied, the relevant factors are length of delay,

reason for delay, prejudice to the defendant and defendant's assertion of his right. See also, *Fossey* v. *State* (1970), 254 Ind. 173, 258 N.E.2d 616. The *Barker* standard for measuring defendant's right to speedy trial is equally applicable to Ind. Const., Art. I, Sec. 12. *Collins* v. *State* (1975), 163 Ind. App. 72, 321 N.E.2d 868.

CR. 4 provides guidance by analogy to the similar fact situation where there has been a delay in trial while defendant was in jail. In essence CR. 4 indicates Indiana's desire to provide the constitutionally guaranteed speedy trial. As indicated in CR. 4 the defendant shall have a speedy trial except where a continuance was had on his own motion or the delay was caused by his act.

In the present case the length of the delay, five months from the filing of the indictment to the execution of the warrant, is not itself inordinate. The subsequent period from the date of defendant's arrest (November 3, 1973) to his trial (July 22, 1975) involved delays occasioned by the defendant. The delay in executing the arrest warrant could be attributed to the fact that defendant had moved to another state and his whereabouts was not known to the authorities.

Defendant claims he was prejudiced by the post-indictment pre-arrest delay because he was thereby unable to locate four witnesses who could have testified in his behalf. Because these witnesses apparently had no first-hand knowledge of the drug sale, it does not appear that the defense was in any manner impaired by the delay. Moreover, by fighting extradition to Indiana and moving for continuances, defendant himself significantly contributed to the further delay in trial.

The cases cited by the defendant all involve readily distinguishable fact situations and do not lend any support to his contention. For these reasons we feel that defendant was not denied his constitutionally guaranteed right.

## II.

The second issue for our consideration is whether there was sufficient evidence to sustain the conviction. The defendant's argument attacks the credibility of Hale, the only witness testifying to the drug sale. As support for the proposition that a reviewing court can consider the credibility of witnesses, defendant relies on *Easton* v. *State* (1967), 248 Ind. 338, 228 N.E.2d 6. However, the import of *Easton* is explained by Judge Lowdermilk in *Yeley* v. *State* (1972), 153 Ind. App. 133, 286 N.E.2d 183 at 187:

"The rule that we cannot weigh the evidence nor can we determine the credibility of witnesses has not been changed and *Easton* v. *State, supra,* must not be considered to change that rule."

When presented with a challenge to the sufficiency of the evidence, therefore, this court will consider only the evidence most favorable to the verdict and the reasonable inferences which may be drawn therefrom. If there is substantial evidence of probative value from which the trier of fact could reasonably infer that the defendant was guilty beyond a reasonable doubt, the conviction will be affirmed. *Owens* v. *State* (1975), 263 Ind. 487, 333 N.E.2d 745.

In the present case, the testimony of Richard Hale established all of the essential elements of the crime of Sale of a Narcotic Drug.[3] In addition to his testimony concerning the actual exchange, Hale also gave testimony to show that the drug sale was not authorized by law. This testimony alone is sufficient to sustain a conviction for the sale of heroin. *Releford* v. *State* (1975), 163 Ind. App. 534, 325 N.E.2d 214. Additional testimony from Trooper Bates corroborated some of the events described by Hale. Bates stated that he recognized the voice of the defendant in the transmitted conversations and

---

3. Ind. Ann. Stat. § 10-3520 (Burns 1956) provides: "It shall be unlawful for any person to manufacture, possess, have under his control, sell, prescribe, administer, dispense, compound or use any narcotic drug or drugs except as authorized in the laws of the United States or of the State of Indiana, or for any person to be found in a public place under the influence of narcotic drugs."

overheard Hale counting out the money. Further testimony from Bates accounted for the chain of custody to the time of trial and expert testimony based on a chemical analysis established the identity of the white powder as heroin.

## III.

The third issue for our consideration is whether Stewart was prejudiced by the fact that a juror spoke to a witness for the State. While the practice of permitting jurors to mingle with participants in the trial is not to be encouraged, such conduct by a juror does not result in automatic reversal. *Myers* v. *State* (1960), 240 Ind. 641, 168 N.E.2d 220. The defendant must show that the alleged misconduct was prejudicial to his fundamental rights or state a set of facts from which it may be presumed that his rights were prejudiced. *Trombley* v. *State* (1906), 167 Ind. 231, 78 N.E. 976.

The present case does not establish a prima facie presumption of prejudice. An example of jury misconduct which is prima facie prejudicial to the defendant is found in *Woods* v. *State* (1954), 233 Ind. 320, 119 N.E.2d 558. There, police officers who were witnesses for the State and the Sheriff who had been active in solving the crime visited with jurors in the room set apart for the jury. By comparison, the conversation alleged here took place as Trooper Bates was walking from the courtroom to the hallway. Upon similar facts, the Supreme Court has held that this does not give rise to prima facie presumption of prejudice. *Myers* v. *State, supra,* (jurors conversed with three witnesses for the State while sitting in the courtroom corridor during intermission).

In the present case, the defendant does not show how he was harmed by the conversation. Moreover, the State produced affidavits from the juror and Bates showing that their communications had nothing to do with this case. The con-

versation pertained to a parking ticket which the juror had received during the trial.

## IV.

The final issue for our consideration is whether Stewart was tried by a jury of his peers. Defendant, who is black, claims that he was not tried by a jury of his peers because none of the jurors were black.

The right to an impartial jury precludes systematic and intentional exclusion of any particular class of persons, but it does not require that any particular group be represented. *Shuemak* v. *State* (1970), 254 Ind. 117, 258 N.E.2d 158. The initial burden of demonstrating purposeful discrimination is on the defendant. *Sanders* v. *State* (1972), 259 Ind. 43, 284 N.E.2d 751. When such a challenge is made to the jury selection process, the issue is whether or not there is a "significant disparity" between the percentage of black citizens selected for jury duty and the percentage of black citizens in the community. Because the record in this case is devoid of any evidence on this issue, the court is unable to conclude that defendant was denied his right to trial by a fair and impartial jury of his peers. Accord: *Overton* v. *State* (1974), 161 Ind. App. 650, 317 N.E.2d 467.

Furthermore, defendant failed to preserve this issue at trial. On the face of the record, no objection to the venire was made at any time during the trial. Unless a timely objection is made, the question of jury irregularity is not saved for presentation on appeal and it is assumed that the jury was acceptable to the defendant. *Boyle* v. *State* (1955), 234 Ind. 215, 125 N.E.2d 707. Counsel for the defendant claims, however, that he did question the composition of the jury prior to selection, but that the tape recorder was turned off at the time. Counsel for the defendant made no effort to pursue the remedial steps available in such cases. If the record of the trial proceedings was inadequate, his proper remedy was to

seek correction or modification of the record under Ind. Rules of Procedure, AP. 7.2(C). *Prather* v. *State* (1973), 158 Ind. App. 61, 301 N.E.2d 667. This court has held that it cannot consider any matter which is not contained in the record. *Glen* v. *State* (1973), 154 Ind. App. 474, 290 N.E.2d 103.

Judgment affirmed.

Robertson, C.J. and Lowdermilk, J., concur.

NOTE.—Reported at 354 N.E.2d 749.