Albert Benton SAMMONS, Appellant,

v.

STATE of Indiana, Appellee.

No. 1–579A134.

Court of Appeals of Indiana,
First District.

Dec. 4, 1979.

Rehearing Denied Jan. 16, 1980.

Thomas C. Scott, Stephen M. Sherman, Indianapolis, for appellant.

Theodore L. Sendak, Atty. Gen., Michael Gene Worden, Deputy Atty. Gen., Indianapolis, for appellee.

ROBERTSON, Judge.

Albert Benton Sammons (Sammons) was found guilty in a trial by jury of two offenses. The first offense was battery while armed with a deadly weapon.[1] The second offense was confinement while armed with a deadly weapon.[2]

We affirm.

---

1. Ind.Code 35–42–2–1(3).

2. IC 35–42–3–3(1).

This case arises from events occurring on the evening of October 14, 1977, in the Greenwood Shopping Center parking lot. The victim was attempting to leave the lot when Sammons, armed with a pistol, entered her car from the driver's side and pushed her across the seat. A struggle ensued and the victim was struck several times and wounded when the gun discharged. Sammons then ran to a red truck and fled. Based upon the victim's description, and by tracing jeweler's markings stamped on a watch found in the victim's car, the police identified the assailant as Sammons.

While conducting the investigation, the police displayed a school yearbook to the victim and asked her to examine the senior class. She picked the defendant's photo from those listed. Subsequently the victim traveled to Sammons's place of employment with the investigating officer and viewed a red truck with tool boxes which she felt was similar to a truck driven by the assailant. The defendant was arrested, charged with the described offenses and then placed in a line-up for viewing by the victim. The victim identified Sammons as the assailant.

This line-up became the subject of a pre-trial motion to suppress by Sammons. He alleged that he was denied counsel at the line-up, that the line-up and events leading to it were impermissibly suggestive, and therefore all evidence of identification by the victim was tainted and should be suppressed. The trial judge sustained the motion with respect to denial of counsel and suppressed evidence pertaining to the line-up. The motion was denied as to events preceding the line-up, the victim's identification of the defendant, and the alleged tainting of this evidence.

The motion to suppress hearing was held on the date set for trial. At that time defense counsel offered an untimely notice of alibi. Counsel indicated Sammons had been on active National Guard duty for several days and had only become available to counsel for discussion of the alibi on the night before trial. The State objected to the untimely notice. As a result, an agree-ment was reached whereby the State waived its objection to the notice of alibi and the defense agreed to stipulate to the admissibility of documents pertaining to repairs made to the watch found in the victim's car.

At trial, the victim positively identified her assailant. She also testified that she had previously identified the defendant's unnamed photograph in a high school yearbook. Defense counsel made no objection to this identification. The victim further testified that she never gave consent for the defendant to enter her car or touch her.

The Security Manager at Sears, Roebuck and Company in Greenwood testified he was contacted by the investigating officer to assist in tracing jeweler's markings found on the watch recovered at the scene. He identified correspondence pertaining to the inquiry and a repair order dated May, 1977, bearing the defendant's signature.

Several other State's witnesses, who had been with Sammons on the date the crime occurred, testified. These people were at a local restaurant drinking with the defendant on the night the crime occurred. Their testimony indicated the defendant left the restaurant prior to the time the crime occurred, that he was dressed in a dark uniform with patches similar to the victim's description, and that he owned a watch similar to the one found at the scene. The testimony also indicated Sammons had permission to drive the truck previously mentioned.

The jury found Sammons guilty of battery with a deadly weapon and confinement while armed with a deadly weapon. He was sentenced concurrently to a term of four years for the crime of battery with a deadly weapon and to a term of seven and one-half years for the crime of confinement while armed with a deadly weapon.

The first issue we consider is whether the trial court erred in refusing to sustain Sammons's entire pre-trial motion to suppress evidence. The court refused to suppress the victim's identification of the defendant and events leading to the line-up. The court found no impermissible suggestive-

ness in the line-up and therefore no taint on this evidence.

■ Sammons makes an eloquent argument but concedes a point fatal to his position before its merits can be reached. He admits that no objection was made at trial to the introduction of the victim's identification. The record also shows no objection was made to evidence pertaining to the examination of the yearbook which preceded the line-up. Sammons argues that no objection is necessary when the issue has been raised in a partially denied pre-trial motion. The defendant's contention is based upon *Lockridge v. State*, (1975) 263 Ind. 678, 338 N.E.2d 275. Defendant concedes that a later case has eroded *Lockridge* but contends the case is aberrational. This view is incorrect. In *Pointon v. State*, (1978) Ind., 372 N.E.2d 1159, 1161, the Supreme Court specifically overruled the relevant part of *Lockridge*. Subsequent cases reinforce *Pointon*. The Court in *Stubblefield v. State*, (1979) Ind., 386 N.E.2d 665, 667, declared:

> We have repeatedly stated that the failure to object at trial to the admissibility of evidence, constitutes a waiver of the issue, preserving nothing for review. This is true, even where a motion in limine has been overruled prior to trial. [Citations omitted.]

■ The second issue for consideration is the allegation that Sammons was denied effective assistance of counsel because of his trial attorney's incompetency. Sammons is aware of Indiana's standard for competency but argues the threshold has been crossed in this case. The standard has been stated as follows:

> It is well settled that it requires strong and convincing evidence to rebut the presumption that counsel has been competent. Incompetency of counsel revolves around the particular facts of each case, and what the attorney did or did not do must have made the proceedings a mockery of justice shocking to the conscience of the reviewing court to constitute incompetence. This court will not second-guess tactics or strategy of a particular attorney in a particular case.

*Dull v. State*, (1978) Ind., 372 N.E.2d 171, 173 (citations omitted). *See also Crisp v. State*, (1979) Ind., 394 N.E.2d 115.

Sammons argues that an ordinarily unreviewable tactical decision should be reviewed in this case because the tactic was necessitated by counsel's neglect. Trial counsel entered into an agreement with the State whereby an untimely notice of alibi was admitted in exchange for the stipulated admission of documents which proved to be damaging to Sammons's case. The defendant asserts that the delay in filing the notice and the stipulated admission of the documents, which would otherwise be inadmissible in the defendant's view, constitutes incompetence. The defendant concedes that counsel's representation was otherwise competent. The Supreme Court addressed instances of isolated mistake in *Merida v. State*, (1979) Ind., 383 N.E.2d 1043, (citing *Blackburn v. State*, (1973) 260 Ind. 5, 291 N.E.2d 686):

> Isolated instances of poor strategy, bad tactics, or mistakes do not constitute ineffective counsel unless, taken as a whole, the record shows that the trial was reduced to a mockery of justice.

Furthermore, it is not clear that the documentary evidence in question would have been barred absent the stipulation. Evidentiary rules allow the admission of business documents as an exception to the hearsay rule in similar situations.

Following *Merida*, the record taken as a whole in this case simply does not reveal a mockery of justice. The defense counsel vigorously participated in the trial and the pre-trial hearing. Counsel presented defense evidence, challenged State's evidence, and examined witnesses. This court cannot say that trial counsel should have avoided the stipulation because to do so would make the court a judge of the attorney's tactical decisions rather than his competency.

■ The next issue for review is Sammons's claim of error because the trial court refused all but one of his tendered instructions. A portion of the defendant's ten-

dered instructions emphasized circumstantial evidence and postulated a standard of proof which would require the State to overcome every reasonable hypothesis of innocence when utilizing circumstantial evidence. The Indiana Supreme Court has stated that circumstantial evidence does not have to overcome every reasonable hypothesis of innocence; instead it is necessary that an inference may reasonably be drawn from the evidence to support the jury's finding. *Parks v. State*, (1979) Ind., 389 N.E.2d 286; *Cummings v. State*, (1979) Ind., 384 N.E.2d 605. These tendered instructions incorrectly stated the law and there was no error in refusing them. *Smith v. State*, (1979) Ind., 388 N.E.2d 484.

■ Sammons also argues that the trial court invaded the jury's function by refusing instructions dealing only with circumstantial evidence, thus implicitly suggesting that direct evidence existed. This viewpoint is groundless. When there is direct evidence coupled with circumstantial evidence it is not error to refuse such instructions. *Faught v. State*, (1979) Ind., 390 N.E.2d 1011.

■ Sammons also tendered instructions emphasizing the standard of reasonable doubt and the State's burden of proving each element of the crime charged. He makes the unique argument that the trial court had a duty to give all tendered instructions which accurately stated the law because he was faced with imprisonment. He also argues that the court's given instructions inadequately covered these subjects.

Our examination reveals the trial court gave several instructions which adequately covered the elements of the crime, the reasonable doubt standard of proof, and the necessity of proving each element of the crime before a guilty verdict is proper. There was no error in refusing the tendered instructions because the law they embodied was adequately covered by the trial court's instructions. The defendant's argument that the court has a duty to give all accurate instructions is erroneous. *Tolbert v. State*, (1979) Ind., 391 N.E.2d 823; *Smith v. State*, (1979) Ind., 388 N.E.2d 484.

■ The defendant also alleges error in the trial court's refusal to tender his instructions dealing with the credibility of witnesses. The trial court adequately covered the credibility of witnesses with preliminary and final instructions. The given instructions emphasized the jury's responsibility to weigh and credit or discredit testimony. The instructions drew attention to consistency in testimony and whether there was corroborating evidence. The instructions referred to the witness's opportunities to observe, and recollect. The previously cited cases, *Tolbert* and *Smith*, support the court's refusal.

■ The fourth issue raised for review is whether there was sufficient evidence to sustain the findings of the jury. It is axiomatic in reviewing this issue that we neither weigh the evidence nor resolve questions of witness credibility. We consider only that evidence most favorable to the State, together with all reasonable and logical inferences to be drawn therefrom. When there is substantial evidence of probative value to support the jury's verdict, the conviction will not be set aside. *Hutcherson v. State*, (1978) Ind., 380 N.E.2d 1219.

■ We believe that there was sufficient evidence to support the jury's verdict as to the battery charge. The victim identified Sammons. Also, Sammons's watch and the vehicle he was driving were tied to the crime. It is also indisputable that an assault occurred and that a gun was involved.

■ Assuming the facts most favorable to the State, Sammons contends that, as a matter of law, there was no confinement here. Confinement is defined, *(inter alia,)* as a substantial interference with the liberty of another person without his or her consent. IC 35–42–3–3 and IC 35–42–3–1. The crime is aggravated if committed while armed with a deadly weapon. Sammons contends that all crimes against the person would necessarily involve interference with liberty of another and that the legislature did not intend to couple confinement with

each of these crimes. Sammons further contends that the detaining of the victim was of such a brief period that the interference was not substantial.

We disagree with this analysis. We need not decide the various examples that Sammons presents; rather, in this case there was sufficient evidence to find that Sammons, above and beyond the physical interference caused by the battery, substantially interferred with the liberty of the victim. The evidence shows he entered her vehicle and prevented her from going about her business at gunpoint. The fact that the time involved was brief is not the determinative factor of "substantial". While time may be a factor, it is the type or nature of interference that is most significant.

We next address the issue of whether double punishment occurred in this case in violation of the Fifth Amendment of the United States Constitution. The leading case in Indiana is *Elmore v. State*, (1978) Ind., 382 N.E.2d 893, which held that where the same act or transaction violates two distinct criminal statutes, there are separate and independent offenses only when each crime requires proof of an element which the other does not. As an examination of the informations shows, it is a close issue whether the battery charge is a lessor included offense of the confinement charge, since the confinement was alleged by the information to include force against the victim. Obviously, if battery is a lesser included offense, the double punishment rules applies. *See Beck v. State*, (1978) Ind., 382 N.E.2d 164. However, in this case, each crime required proof of an element not contained in the other. The battery required a touching and the criminal confinement in this case, as shown by the entering of the victim's automobile and preventing her from proceeding, was proved by an inference above and beyond the actual battery.

Finding no error, we affirm.

NEAL, J., and BUCHANAN, C. J. (sitting by designation), concur.