Jesse Lee HAYNES, Appellant,

v.

STATE of Indiana, Appellee.

No. 880S351.

Supreme Court of Indiana.

Feb. 11, 1982.

Harriette Bailey Conn, Public Defender, Kurt A. Young, David P. Freund, Deputy Public Defenders, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Michael Gene Worden, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Defendant Jesse Lee Haynes was convicted on two counts at the conclusion of a jury trial in Elkhart Superior Court on February

6, 1980; possession of Marijuana, Ind.Code § 35–48–4–11 (Burns Supp.1981), and dealing in Marijuana, Ind.Code § 35–48–4–10 (Burns Supp.1981). The following day, February 7, 1980, defendant was found to be a habitual offender, Ind.Code § 35–50–2–8 (Burns Supp.1979). Defendant was sentenced to a term of four (4) years on each of the two counts; upon the finding of habitual offender, the defendant was given an additional sentence of thirty (30) years imprisonment. His conviction and sentence is the subject of this appeal.

■ Five errors are asserted by the defendant, concerning: (1) whether there was sufficient evidence introduced at trial to show defendant sold marijuana to informant Robert Neely; (2) whether there was sufficient evidence introduced at trial to show defendant either actually or constructively possessed the marijuana found in his house; (3) whether the trial court erred in refusing defendant's tendered instruction number eight relating to circumstantial evidence; and (4) whether the trial court erred in permitting the jury to take certain final instructions to the jury room in lieu of reading them in open court at the end of the habitual offender phase of the trial. Defendant's fifth error, an allegation that the trial court erred in denying his motion to suppress all evidence obtained by the use of the search warrant, will not be reviewed here. Although a motion to suppress has been overruled prior to trial, when the evidence is later offered at trial no error will be preserved unless there is an objection at that time. *Lock v. State*, (1980) Ind., 403 N.E.2d 1360, 1367; *Pointon v. State*, (1978) 267 Ind. 624, 627, 372 N.E.2d 1159, 1161. Defendant's failure to object has resulted in a waiver of this error on appeal.

The crime in question occurred on October 19, 1979, when an informant, Robert Neely, acting under police instruction, purchased marijuana from the defendant. That same evening a search warrant was issued for the defendant's residence. After reading the warrant to the defendant, the police found some marijuana in a bathroom occupied at that time by Nancy Reid, a guest of defendant.

I.

Defendant Haynes first argues that the evidence is insufficient to support his conviction of selling marijuana. In support of this alleged error, defendant claims that the controlled buy did not have adequate controls and that no rational trier of fact could have found that the defendant sold marijuana.

■ One of defendant's contentions was that Robert Neely, the police informant who bought the marijuana, was an inherently incredible witness at the trial. This argument ignores our well-established standard of review in cases where the evidence is claimed to be insufficient. We will not reweigh the evidence nor judge the credibility of witnesses. *E.g., Ashbaugh v. State*, (1980) Ind., 400 N.E.2d 767, 775; *Stanley v. State*, (1980) Ind., 401 N.E.2d 689, 693; *Willard v. State*, (1980) Ind., 400 N.E.2d 151, 160. These are functions for the jury to perform. *E.g., Riggenbach v. State*, (1979) Ind., 397 N.E.2d 953, 956; *Taggart v. State*, (1979) Ind., 390 N.E.2d 657, 659. In addition, a conviction in a drug case may be sustained upon the testimony of an informant alone. *Stewart v. State*, (1976) 170 Ind.App. 696, 702, 354 N.E.2d 749, 754; *Jones v. State*, (1975) 166 Ind.App. 160, 162, 334 N.E.2d 716, 717.

■ The evidence at trial revealed the following: Robert Neely, the police informant, tried four times to buy marijuana from defendant Haynes. The first time defendant was not at home; the second time defendant was at home but no sale was made. On the third attempt Neely and defendant met near the home of Neely's parents but Neely testified that defendant had no marijuana but would get some later. Neely and the police met later that evening. Crowder, one of the two officers present, searched Neely and his car but found no marijuana. After the search Neely was given $100.00 in order to purchase the marijuana. The police followed Neely as he drove to defendant's house. Neely parked

in front of defendant's house and was watched by the police as he approached the residence. The two police officers, Crowder and Cutler, testified that Neely appeared to enter the house. When Neely left the house Crowder and Cutler followed him to a church parking lot. There Neely handed over a bag of marijuana and $60.00. He said the marijuana cost $35.00 but defendant Haynes did not have any change for the twenties. On the basis of this exchange a search warrant was issued for defendant Haynes' residence.

Defendant relies on *Mills v. State*, (1978) Ind.App., 379 N.E.2d 1023 for his contention that the controlled buy was faulty. The Court of Appeals stated in *Mills*:

> "A controlled buy consists of searching the person who is to act as the buyer, removing all personal effects, giving him money with which to make the purchase, and then sending him into the residence in question. Upon his return he is again searched for contraband. Except for what actually transpires within the residence, the entire transaction takes place under the direct observation of the police. They ascertain that the buyer goes directly to the residence and returns directly, and they closely watch all entrances to the residence throughout the transaction."

*Id.*, 379 N.E.2d at 1026.

Haynes contends that under *Mills*, the controlled buy was not adequate because: the police did not adequately search Neely and the car he was driving prior to the alleged buy; the police did not observe him at all times prior to and after he was in defendant's home; and the police did not observe or monitor the buy.

First, under *Mills*, the police do not have to observe the actual buy. They ascertain that the informant goes up to the house empty-handed and comes back with the controlled substance. There is no requirement that they actually see the illegal transaction take place. Second, Neely was searched before the controlled buy. The police gave him a "pat-down" search and also searched his car. They made sure he did not stop

anywhere or meet anyone before arriving at defendant's house. It is true that due to darkness the police officers did not actually see Neely enter the defendant's home although they did observe Neely approach the front of the house. However, on the witness stand, the police officers testified that they watched Neely leave the house. In addition, no one was seen to enter or leave the house while Neely was inside. When Neely came out he entered his car and drove to a church parking lot. The police followed him and made sure he did not stop to meet anyone on the way. While in the parking lot Neely turned over the marijuana and the remaining amount of money. While it is true that the record does not indicate that Neely was searched after returning from the defendant's house, the fact remains that he was searched before he entered defendant's house. At that time no marijuana was found but when Neely returned he did have marijuana. *See Watt v. State*, (1980) Ind.App., 412 N.E.2d 90.

We believe that the controls over the buy were adequate and the evidence was sufficient to sustain a conviction for selling marijuana. The fact that the informant was not actually seen entering the house was a factor for the jury to consider in weighing the evidence. *Whirley v. State*, (1980) Ind. App., 408 N.E.2d 629. This is not to say that in all instances such behavior will uphold a controlled buy. We are merely saying that under the facts presented before us, the controls were adequate and the evidence was sufficient to convict defendant Haynes of selling marijuana.

## II.

Defendant's second argument also deals with a sufficiency of the evidence claim. As we noted above, we will not reweigh the evidence nor judge the credibility of witnesses; these are functions for the jury to perform. *See* Issue I, *supra*, and cited cases therein.

Upon the issuance of the search warrant, three officers went to 505 Hubbard Street and read the warrant to the defendant. While one officer was reading the warrant,

another officer was walking around the house. This officer, Cutler, observed someone in the bathroom through a window. The three officers, Crowder, Cutler, and Lee, entered the residence. Once inside, Crowder finished reading the warrant and Cutler went to the bathroom. He knocked upon the door and it was opened by Nancy Reid. Two bags of marijuana were found inside a counter of the bathroom. Nancy Reid, testifying under a grant of immunity, said the marijuana was hers and defendant did not know she had it; earlier she had given a statement saying it belonged to Haynes. Defendant said it was not his and he had no idea she brought it or had it in the house. Steve Staggs testified that he sold marijuana to the defendant earlier that evening. There was also evidence of the sale of marijuana by the defendant to the police informant, Robert Neely.

Since possession of a controlled substance in Indiana may be founded upon either actual or constructive possession, we need only determine whether the evidence was sufficient to prove constructive possession. Defendant states that the marijuana was found in the bathroom, a room he feels was under the exclusive control of Nancy Reid since she was occupying it at the time. Therefore, defendant feels that although he was the owner of the house, the control of the bathroom was nonexclusive at the time the marijuana was found. Defendant is correct in stating that mere presence in the vicinity or association with one having possession of drugs is not sufficient to sustain a conviction. *See Ledcke v. State*, (1973) 260 Ind. 382, 390, 296 N.E.2d 412, 416; *Martin v. State*, (1978) Ind.App., 372 N.E.2d 1194, 1198. However, additional proof may be introduced to show that defendant had knowledge of the contraband on the premises; this would indicate a knowing possession of the marijuana. Judge Buchanan stated in his concurring opinion in *Martin* :

"[I]t does appear that Indiana has adopted the rule that if possession of property is non-exclusive, the prosecution must bring forth some evidence which would indicate the defendant had knowledge of the drug. *Greely v. State,* (1973) Ind.

App., 301 N.E.2d 850. If, in addition to non-exclusive possession, there had been flight, *Ledcke v. State*, (1973) 260 Ind. 382, 296 N.E.2d 412, furtive gestures, *Moss v. State*, (1975) Ind.App., 333 N.E.2d 141, close proximity by Martin to the contraband, *Thurman v. State*, (1974) Ind. App., 319 N.E.2d 151, close proximity of the contraband to items owned by Martin. *See People v. White*, (1969) 71 Cal.2d 80, 75 Cal.Rptr. 208, 450 P.2d 600, or if the contraband was in plain view, *Mills v. State*, (1975) Ind.App., 325 N.E.2d 472, a conviction might be sustained."

*Id.*, 372 N.E.2d at 1200.

There was additional evidence introduced at trial showing or indicating that defendant Haynes had some knowledge of marijuana in his house. Staggs testified about selling marijuana to the defendant earlier in the evening; Neely testified that defendant sold him marijuana a short time before it was discovered in the bathroom. This evidence adds up to show that defendant Haynes knew of the presence of marijuana and therefore was in constructive possession of it because, as owner of the house, he could control the activities inside. We find that there was sufficient evidence to prove Haynes had knowing and constructive possession of marijuana.

### III.

Haynes next argues that the trial court erred in refusing tendered instruction number eight regarding circumstantial evidence. This instruction provided:

"You are instructed that a jury must believe beyond a reasonable doubt that the accused committed the crime with which he is charged, and where the evidence is circumstantial, as it was in this case, it must be of so conclusive a character and point so surely and unerringly to the guilt of the accused as to exclude every reasonable hypothesis of his innocence. The verdict may not be based on mere suspicion, possibility, guess, or conjecture."

The trial court refused the instruction because it was "duplicated by instructions previously given by the Court covering the same issues. . . ."

■ First, we would note that the trial court did have an instruction on circumstantial evidence, although it was not in the form that defendant requested. Second, this case involved both direct and circumstantial evidence. Some of the direct evidence included a witness' testimony that he sold marijuana to the defendant on the night of October 19, 1979; another witness, the police informant, testified that he bought marijuana from the defendant on that evening. There was also testimony that the marijuana was found at 505 Hubbard Street and that defendant resided at that address. Where there is both direct and circumstantial evidence of guilt, the trial court is not required to instruct the jury on circumstantial evidence. *Bales v. State*, (1981) Ind., 418 N.E.2d 215, 217; *Faught v. State*, (1979) Ind., 390 N.E.2d 1011, 1017; *Sammons v. State*, (1979) Ind. App., 397 N.E.2d 289, 293. The trial court did not err in refusing the tendered instruction.

### IV.

On February 6, 1980, the jury found defendant Haynes guilty of delivery of marijuana and possession of marijuana. The following day the jury heard evidence on the habitual offender charge. The trial court then read instructions 1–8 to the jury. In addition, the trial court resubmitted several final instructions which had been read to the jury during the trial of the underlying felony. The trial court instructed the jury to construe all of the instructions together. Defendant Haynes argues that it was error for the jurors to take the resubmitted instructions into the jury room without the trial court reading them again to the jury in open court.

This court has stated in *Wofford v. State*, (1979) Ind., 394 N.E.2d 100 that "[a]lthough jury instructions are generally not to be sent to the jury room during deliberations this Court has held that it is harmless error

to do so if the crucial requirement of first reading the instructions in open court in the presence of the parties and their attorneys was met. *Morris v. State*, (1979) Ind., 384 N.E.2d 1022; *Jameison v. State*, (1978) Ind., 377 N.E.2d 404." The rationale for having the trial court orally instruct the jury in open court is that once the instructions go to the jury room the trial court judge has no way of knowing how the job of reading the instructions was done or if it was done at all. *Williams v. State*, (1978) 269 Ind. 430, 431, 381 N.E.2d 458, 458.

■ In the case at bar, all the instructions sent to the jury room had been read first in open court. The same jury that convicted defendant on the underlying felony heard evidence on the habitual offender charge. The only problem presented here is that several of the instructions had been read the day before when the jury convicted the defendant on the underlying felony. Those instructions were not reread before being given to the jury when it began deliberations on the habitual offender charge. This Court has held that the habitual offender procedure does not constitute a separate crime or trial; rather, it provides for the imposition of a greater sentence for the crime charged. *Norris v. State*, (1979) Ind., 394 N.E.2d 144, 147; *Eldridge v. State*, (1977) 266 Ind. 134, 139, 361 N.E.2d 155, 159, *cert. denied* (1977) 434 U.S. 928, 98 S.Ct. 412, 54 L.Ed.2d 287. Therefore, finding that all of the instructions had been read once in open court to the same jury, and since the habitual offender phase of the trial does not constitute a separate trial, we do not find any error in resubmitting instructions without re-reading them.

The judgment of the trial court is affirmed.

GIVAN, C. J., and DeBRULER and PRENTICE, JJ., concur.

HUNTER, J., dissents in part and concurs in part with separate opinion.

HUNTER, Justice, dissenting in part, concurring in part.

I concur in the conclusions of the majority that defendant's convictions for posses-

sion and sale of marijuana should be affirmed. I must respectfully dissent, however, from the majority's determination that the jury was properly instructed during the habitual offender phase of the proceedings. *See Majority Opinion*, Issue IV. I would vacate the habitual offender finding and remand the cause for a new hearing on that count.

After all evidence regarding the habitual offender count had been presented to the jury, the trial court read aloud eight final instructions to the jury. Detailed in the first seven instructions read to the jury were matters of law peculiar to the habitual offender charge the jury was about to consider. In instruction eight, the court, over defendant's objection, informed the jurors of the following:

> "Court's final instructions numbered 1, 2, 3, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 26, 27, 28, 29, 31, and 33 are being submitted to you along with Court's supplemental final instructions numbered 1 through 8, without re-reading the original court's final instructions and the Court's final instructions and the Court's Supplemental Final Instructions are all to be taken and construed together."

The quotation "Court's final instructions numbered 1, 2, 3, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 26, 27, 28, 29, 31, and 33" refers to instructions on general rules of law (*e.g.*, jurors' responsibilities, burden of proof, presumption of innocence, reasonable-doubt standard, credibility of witnesses, etc.) which the court had read to the jury prior to its deliberations on the underlying felony charges—the controlled substances counts. That reading had occurred the previous day.

Then, as the instruction indicates, the court provided the jury with copies of the numerous instructions referred to by number, as well as the eight instructions which had been read aloud, and directed the jury to retire. "All" the instructions were "to be taken and construed together," according to instruction number eight.

In his brief, defendant has predicated his claim that the trial court erred in failing to read aloud the instructions on Ind.Code § 35–1–35–1 (Burns 1979 Repl.), Ind.R.Tr.P. 51, and *Purdy v. State*, (1977) 267 Ind. 282, 369 N.E.2d 633. In *Purdy*, this Court reversed defendant's murder conviction for the reason that the trial court had failed to read aloud its final instructions. Similar to here, the court had instead sent the instructions to the jury room with the directive that the foreman read aloud and discuss the instructions with the fellow jurors.

In our unanimous reversal of Purdy's conviction, this Court extensively analyzed the reasons why a trial court's failure to read aloud final instructions could not be countenanced. Quoting *Smith v. McMillen*, (1862) 19 Ind. 391, we explained:

> " 'The principle is, that the jury shall take the law from the Court. The mode in which the Court communicates with the jury is by addressing them in open Court. The jury take the law from the Court through the ear. By so doing, they generally stand upon equality, because none but men with hearing ears are competent jurors. In the juryroom, then, each depends upon his own recollection of the instructions, and upon the impression they made upon him for their meaning, their construction; and, this standing upon an equality, if they differ, they should come into Court, and, in presence of the parties, let the Court be interpreter of its own instructions. But if; instead of this being done, the court sends the written instructions to the jury, inasmuch as jurors are not upon equality in their ability to read and interpret writing, it puts it in the power of the sharp ones on the jury to read, and become the interpreters for the Court, and mislead their less skillful fellow-jurors. We think instructions should not be sent to the juryroom, without consent of both parties.' " *Purdy v. State, supra*, 267 Ind. at 286, 369 N.E.2d at 634–35.

In concluding, we stated:

> "This duty was delegated to the foreman of the jury under circumstances where it cannot be known how the job was done, or whether it was done at all. This was

not only in violation of the settled law in Indiana as set out above, but it was also directly in violation of Ind.R.Tr.P. 51(A), (B) and Ind.Code § 35–1–35–1 (Burns 1975)." *Id.*, 267 Ind. at 289, 369 N.E.2d at 636.

Likewise, in the circumstances present here, there is no way of knowing whether the written instructions were construed together with the instructions read to the jury; there is no way of knowing "how the job was done, or whether it was done at all."

Still, the majority finds no error, stating the "only problem presented here is that *several* of the instructions had been read the day before when the jury convicted the defendant on the underlying felony." [Emphasis added.] The "several" instructions represented twenty of the twenty-eight instructions the jury was supposed to consider in its deliberations over the habitual criminal charges after it had retired.

Relying on the proposition that the hearing conducted on an habitual offender count is not a "separate crime or trial," as enunciated in *Norris v. State*, (1979) Ind., 394 N.E.2d 144, the majority summarily concludes the fact the instructions had been read the day before to the same jury was sufficient. That rationale pays short shrift to the reasons instructions should always be read in open court; in addition, it shows little regard for the extreme consequences at stake for the defendant in an habitual offender hearing.

Thirty years' imprisonment is the sentence usually imposed on a defendant who is found to be an habitual offender. Ind. Code § 35–50–2–8, *supra*. As here, the consequences of the outcome of the habitual offender hearing are indubitably far greater than those which result from the trial on the underlying felony. That the habitual offender hearing technically is not characterized as a "separate trial" does not diminish this fact.

Furthermore, the habitual offender hearing is a proceeding wholly distinct from the trial on the underlying felony. At the conclusion of the latter, the jury, as here, usually separates and returns to their homes;

this Court is fully mindful of the effect a separation may work on the individual jurors' intellectual processes with regard to the law before it. *See Follrad v. State*, (1981) Ind., 428 N.E.2d 1201; *Bales v. State*, (1981) Ind., 418 N.E.2d 215.

When the jury reconvenes, the habitual offender hearing proceeds in the format of a trial, complete with preliminary instructions, presentation of evidence, opening and closing arguments, and final instructions. At issue for the jury's resolution is a substantive legal matter wholly distinct from the underlying felony charge.

In resolving the question, the jury must adhere to the same *general* responsibilities and rules of law which it was required to follow in disposing of the underlying felony charge. Those matters are neither simple nor insignificant; the responsibility to act impartially, to understand and apply the reasonable-doubt standard, the presumption of innocence, and the duty to weigh the evidence and judge the credibility of witnesses, the burden of proof, the capacity to draw inferences, the distinction between circumstantial and direct evidence, the responsibility to disregard objectionable evidence, and the requirement of unanimity are all fundamental to the jury's proper exercise of its functions.

In light of the grave consequences attendant to the habitual offender hearing, the manner in which the jury is made to understand the law it must apply should not be left to chance. As in *Purdy v. State, supra*, we know not whether the jury did read the instructions again to refresh their memories concerning the law read to them the day before; if it was done, we do not know the manner or by whom the reading was accomplished, or whether in fact the jury "construed" the unread instructions together with those which had been read to them. And, as defendant argues, we do not know whether the trial court's failure to read the instructions conveyed an impression to the jurors that the unread instructions were of less significance than the instructions read to them. Nor can we gauge the effect the separation of the jurors had

on their understanding of the twenty instructions which had been read to them roughly twenty-four hours earlier.

These uncertainties cannot be cured by the fact the trial court made twenty numerical references to the instructions when it read instruction number eight. Those numerical references cannot be said to somehow have refreshed each juror's individual memory as to the substantive rules of law contained in the twenty different instructions.

It is this uncertainty which inspired our unanimous decision in *Purdy*, as well as Ind.R.Tr.P. 51, *supra*, and Ind.Code § 35–1–35–1, *supra*. To deviate from our well-reasoned decision, court rule, and statute on the basis that a habitual offender hearing is not a "separate trial" is to elevate semantics over substance. The stakes are far too significant—both to defendant and the state—to permit a trial court to subjugate those rules to its own convenience.

Here, we cannot be sure the jury approached its task with an informed understanding of the law it was required to apply. We do not know with certainty that in its deliberations, the jury accorded defendant the various constitutional and statutory rights which were due him. The judgment and thirty-year sentence entered on the habitual offender count should be vacated; the cause should be remanded to the court for a new hearing on that count.

I dissent.