Raymond L. ROARKS, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 182S3.

Supreme Court of Indiana.

May 23, 1983.

Kenneth R. Watson, Williamsport, for appellant.

Linley E. Pearson, Atty. Gen., Lee Cloyd, Deputy Atty. Gen., Indianapolis, for appellee.

PRENTICE, Justice.

Defendant (Appellant) was convicted of Armed Robbery, Ind.Code § 35–42–5–1 (Burns 1979) and of being an Habitual Offender, Ind.Code § 35–50–2–8 (Burns Supp. 1982), and sentenced to fifty (50) years imprisonment. This direct appeal presents the following issues:

(1) Whether the trial court erred in refusing to view a videotape of Defendant's pre-*Miranda* advisements interview with the police.

(2) Whether the trial court erred in denying Defendant's pre-trial request for a written transcript of the hearing upon his motion to suppress his confession to the police.

(3) Whether the trial court erred in denying Defendant's request for a written transcript of the aforementioned videotape.

(4) Whether the trial court erred in failing to suppress Defendant's confession to the police.

(5) Whether the trial court erred in refusing Defendant's tendered instruction upon the effect of circumstantial evidence.

(6) Whether the evidence was sufficient to identify Defendant as the bank robber.

(7) Whether the trial court correctly followed the procedure for habitual offender

determinations, Ind.Code § 35–50–2–8(c) (Burns Supp.1982).

(8) Whether the trial court erred in admitting certified copies of records into evidence at the habitual offender proceeding.

(9) Whether the trial court, in the habitual offender proceeding, erred in failing to instruct the jury on the meaning of the term "felony."

(10) Whether the trial court erred in its ruling upon Defendant's motion to correct errors.

(11) Whether the trial court erred in failing to weigh the evidence and to set forth its reasons for its ruling upon the motion to correct errors.

\* \* \*

## ISSUES I, II, III & IV

■ Defendant's assignments of error are premised upon the repeated assertion that the police interrogated him prior to reading *Miranda* advisements and obtaining a valid waiver of rights. Defendant was arrested, and his rights were read to him at that time and again when he arrived at the Warren County Jail. Subsequently, Defendant was transported to the Fountain County Jail. FBI Agent Goodwin admitted that there, prior to the giving of *Miranda* advisements and the obtaining of a waiver thereof by State Police Officer Kesterson, he, Goodwin, had questioned Defendant to obtain "background information." This information included a discussion of Defendant's criminal record. There were no questions posed concerning the robbery which is the subject of this case, *Holt v. State,* (1978) 178 Ind.App. 631, 636, 383 N.E.2d 467, 471, except perhaps by Defendant, who asked why he was in custody in the Southern District of Indiana, whereas the bank robbery had occurred in Warren County, the Northern District of Indiana.

The Fountain County Sheriff had made a videotape of the entire interview between Defendant and the police officers wherein Defendant had confessed, including that portion which had occurred before Defendant waived his rights. This tape was not offered at trial, however, the State did offer a separate audio recording of the same interview.

At the conclusion of the hearing on the motion to suppress, the trial court ruled that the portion of the videotape, which depicted events that had occurred before Officer Kesterson gave the *Miranda* advisements, would be suppressed but that the remainder, the confession, having occurred after a proper waiver of rights, would be admitted. The court also understandably noted, from defense counsel's examination of the witnesses, that the tone of the suppression motion and hearing primarily addressed the habitual offender charge. Defense counsel, although raising the fruit of the poisonous tree doctrine, never clarified the matter until the State offered the aforementioned audio recording at trial. At that time, defense counsel objected and finally stated his position, i.e., the waiver of rights was the fruit of interrogation that had occurred without the giving of *Miranda* advisements. That position seemingly changed, however, and by the end of the hearing upon the offer and objection it appeared to be a claim that the initial violation of Defendant's rights could not have been cured by the subsequent waiver. The court, having already heard a portion of the videotape sound track at the suppression hearing, then asked counsel if the videotape disclosed that the officers had discussed the bank robbery prior to Defendant's execution of the waiver of rights, Counsel responded:

"The only question, Your Honor, come at a period of time when, where there was background noise, that goes specifically to the question of asking Agent Goodwin; there was a question concerning prior bank robberies and there was something I have to use those words because the words on my recorded portion are not fully accurate—'you mean prior to this bank robbery' or 'Yes, prior to this bank robbery' and I don't have the words on my tape; I don't have them, but there was some words prior to 'this bank robbery', \* \* \*" R. at 382.

The court then held:

"It will be found that the statement, tape recorded statement, from the beginning

of advice of rights, was made voluntarily, freely and voluntarily, that is based upon number one, as you just pointed out, Mr. Dowd (Prosecutor), the three previous advice of rights that we have in evidence here by Mr. Conrad (Fountain County Sheriff); it is also based upon the as is disclosed from the record and files here, the defendant's prior experience with the criminal justice system and thirdly it is based upon there being no indications that there is anything in that portion of the tape, the video tape, prior to the advice of rights which would in any way be an incriminating factor which would in any way in my opinion be a violation of any constitutional rights, it was simply a background type of question such as asking somebody their name or something of that nature and does not relate to the crime here, and so I don't feel at this point there is any need for the court to examine that videotape itself * * *." R. at 383.

The record discloses nothing which supports a finding that either Agent Goodwin or Officer Kesterson questioned Defendant about the charged offense before he knowingly and voluntarily waived his rights. *Staton v. State,* (1981) Ind., 428 N.E.2d 1203, 1210. While counsel vigorously asserts a denial of Defendant's constitutional rights, arising from Agent Goodwin's preliminary questioning, he cites nothing in the record that even remotely demonstrates that the Agent or Officer Kesterson did or said anything likely to elicit an incriminating response or a waiver of *Miranda* rights, so as to bring this case within *Rhode Island v. Innis,* (1980) 446 U.S. 291, 301–02, 100 S.Ct. 1682, 1689–90, 64 L.Ed.2d 297, 308, which he cites. Under our standard of review for the admissibility of confessions, *Jackson v. State,* (1980) Ind., 411 N.E.2d 609, 610–11, the evidence amply supports a finding that Defendant did not waive his rights or confess in response to Agent Goodwin's preliminary questions, which were unrelated to the charged bank robbery. *See Gutierrez v. State,* (1979) Ind., 395 N.E.2d 218, 223–24.

With respect to Issues I, II, and III, Defendant has not shown how he was harmed by the asserted failures of the trial court. He cites nothing in the videotape which would have supported a conclusion different from the one reached. Additionally, Defendant was given an opportunity to transcribe the tape, but never did so. He does not explain, in his Brief or by reference to the record, the purpose to which he intended to put the denied written transcript of the suppression hearing or the tape.

### ISSUE V

Defendant next assigns error to the trial court's refusal of his tendered instruction No. 6; derived in part from *Spears v. State,* (1980) Ind., 401 N.E.2d 331, 334:

"Where the evidence is circumstantial in character, it must be of such conclusion and persuasive force that it tends to point surely and unerringly to the guilt of the accused to such an extent that it excludes every reasonable hypothesis of innocence. Therefore, if circumstantial evidence in this case gives rise to two reasonable inferences, one of guilt and one of the defendant's innocence, you must acquit the defendant."

The trial court gave the following instruction:

"Evidence may be broadly classified as being either direct or circumstantial. An example of direct evidence is the testimony of one who asserts actual knowledge of a fact, such as an eye witness; circumstantial evidence is proof of a chain of facts and circumstances indicating the guilt or innocence of a defendant.

"The law makes no distinction between the weight to be given either direct or circumstantial evidence; it does require that the jury, after weighing all the evidence, must be convinced of the guilt of the Defendant beyond a reasonable doubt before he can be convicted."

Based upon the evidence, the trial court's instruction embodied the applicable law. The type of instruction tendered by Defendant is not required where the evidence

of guilt is both direct and circumstantial. *Haynes v. State,* (1982) Ind., 431 N.E.2d 83, 88; *Bales v. State,* (1981) Ind., 418 N.E.2d 215, 217. In this case, there was considerable direct evidence, Defendant's confession, exhibits used in the Robbery, and the testimony of the witnesses at the bank, which established the crime and identified Defendant as the perpetrator. There was no error in the trial court's refusal of this tendered instruction. *Merritte v. State,* (1982) Ind., 438 N.E.2d 754, 759.

## ISSUE VI

■ Defendant next contends that there was insufficient evidence to identify him as the one who committed the robbery. The bandit had worn a disguise during the robbery, and, as a result, none of the several witnesses present was able to identify the Defendant in court. This point is immaterial, however, because it ignores the direct incriminating evidence of Defendant's confession, which we have held was properly admitted into evidence at trial.

## ISSUES VII, VIII & IX .

■ Defendant has consolidated these issues because they all relate to the habitual offender proceeding.

Upon Issue VII, Defendant assigns error to the trial court's assertedly having failed to follow the requirements of Ind.Code § 35–50–2–8(c) (Burns Supp.1982):

> "If the person was convicted of the felony in a jury trial, the jury shall reconvene for the sentencing hearing; if the trial was to the court, or the judgment was entered on a guilty plea, the court alone shall conduct the sentencing hearing under IC 35–4.1–4–3."

Only by reference to the motion to correct errors, do we discover that Defendant contends that the jury was never "reconvened," at least as counsel understands the meaning of the term as used in the statute. The record discloses that after the rendition of the verdict on the robbery count, defense counsel declined an opportunity to poll the jury. Immediately thereafter, without objection, the court informed the jury of the "second portion of this trial." Defendant failed to object and thus preserved nothing for review. But, had he made an objection, it would have been properly overruled. The trial court followed the accepted practice under the statute and did nothing which could have harmed Defendant or which deprived him of the bifurcation guaranteed by due process.

■ Upon Issue VIII, Defendant assigns error to the admission of State's Exhibit No. 69, a set of papers, properly certified under Ind.R.Tr.P. 44(A)(1), which documented Defendant's prior conviction for Uttering a Forged Instrument. He claims the exhibit was not properly certified under Ind.Code § 34–1–17–7 (Burns 1973); however, it is apparent from his failure to cite or refer to Trial Rule 44, that he is unaware that it prescribes an alternative method of authenticating official records. *Collins v. State,* (1981) Ind., 415 N.E.2d 46, 54, *cert. denied,* (1981) 451 U.S. 991, 101 S.Ct. 2331, 68 L.Ed.2d 851.

■ Upon Issue IX, Defendant complains that the trial court failed to instruct the jury upon the meaning of the term, "felony." However, he tendered no instruction upon this matter and consequently, has preserved nothing for review.

## ISSUES X & XI

■ Defendant's argument under these headings raises only one claim: that the trial court, in denying the motion to correct errors, erred in that it failed to provide reasons for its ruling thereon. The motion had requested the trial court to weigh the evidence and to set forth its reasons for the ruling upon the motion.

We rejected this same contention in *Smith v. State,* (1982) Ind., 429 N.E.2d 956, 958–59:

> "Appellant claims the trial court erred by failing to set forth specific findings of fact or conclusions of law when denying the motion to correct errors. In support of this proposition he cites *Moore v. State,* (1980) Ind., 403 N.E.2d 335. In *Moore* this Court held that a trial judge

in ruling on a motion to correct errors has the duty to examine the evidence to ascertain whether or not there is evidence beyond a reasonable doubt to support the verdict of the jury. When the verdict is against the weight of the evidence and a new trial is required, the trial court is compelled by T.R. 59(I)(7) (now 59(J)(7)) to make special findings of fact setting forth the supporting and opposing evidence to each issue upon which a new trial is granted. *The trial court is not so required when overruling a motion to correct errors.*" (emphasis added).

We find no reversible error. The judgment of the trial court is affirmed.

GIVAN, C.J., and HUNTER and PIVARNIK, JJ., concur.

DeBRULER, J., concurs with opinion in which PIVARNIK, J., concurs.

DeBRULER, Justice, concurring.

Defendant was arrested and removed from his car by Sheriff Conrad of Fountain County. He was given a complete advisement of rights at the time but was not questioned. He was transported to the parking lot of Warren County jail where an F.B.I. agent directed that no questions be asked of defendant. A radio broadcast was received that other officials were in search of some money taken in the robbery. At this point defendant volunteered that he knew where a bag of money was. The Sheriff became alarmed and read the *Miranda* rights again to defendant as an admonishment to remain silent. Defendant was driven then to the Fountain County jail. Enroute, he told the Sheriff to drive through Ghost Hollow and that they would find a bag of money there. Under a tree there, evidence of the robbery was found. Upon arriving at the Fountain County jail, defendant was booked on charges of drunken driving and fleeing a police officer. He was read his rights and signed a written waiver and consented to take a breathalyzer test. The test was taken at around 6:00 p.m. At 10:00 p.m. defendant was subjected to the formal interrogation by Kesterson

and Goodwin which commenced with three minutes of questioning regarding defendant's name, address, and prior convictions, before *Miranda* advisements were again given and defendant signed the express written waiver. Given this state of affairs, it is evident to me that by that time defendant had been properly advised of his rights at least twice and had relinquished those rights and volunteered the equivalent of a confession. Therefore at the formal interrogation there was no impingement upon rights secured by *Miranda*.

PIVARNIK, J., concurs.