Danny J. COX, Appellant,

v.

STATE of Indiana, Appellee.

No. 783S257.

Supreme Court of Indiana.

March 21, 1985.

Thomas A. Murto, Murto & Holbrook, Goshen, Nile Stanton, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Amy Schaeffer Good, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Chief Justice.

Trial by jury resulted in a conviction of Murder, a Class A felony. The court, after noting the aggravating circumstances, sentenced appellant to sixty (60) years of incarceration.

The facts are: The decedent, Joe Devine, left his home in the evening of March 5, 1981, to return to the bulk fuel plant he operated. The next morning his body was found on the floor near his office at the plant. He had been shot four times by a handgun from close range.

At trial five witnesses testified as to individual conversations between themselves and the appellant. In each conversation appellant had either admitted killing Joe Devine or killing someone. Evidence was also introduced to show appellant and decedent knew one another. Appellant also admitted being at the bulk fuel plant on a past occasion. Additionally, evidence linked appellant to both a gun and ammunition of the type used in the commission of the crime.

Appellant claims the trial court erred when it failed to give a tendered jury instruction on the issue of circumstantial evidence. In his brief appellant provides the text of the purported instruction. He also cites to that portion of the record where he objected to the court's failure to give the instruction. The record does not reveal the instruction was ever presented in writing as required by law. The failure to tender an instruction in writing is tantamount to the waiver of any alleged error

attendant to the giving of the instruction. *Begley v. State* (1981), 275 Ind. 235, 416 N.E.2d 824.

■ In the case at bar this Court cannot conclude from the record whether the instruction was, in fact, tendered in writing. A criminal defendant has a duty to provide a proper record for appeal so that an intelligent review of the issues may be made. Failure to do so has been found to be grounds for waiver of any alleged error based upon the absent material. *Smith v. State* (1981), Ind., 422 N.E.2d 1179.

We are mindful of Ind.R.App.P. 7.2(C) which provides:

"(C) Correction or Modification of the Record. If, on appeal, any difference arises as to whether the record truly discloses what occurred in the trial court, the difference shall be submitted to and settled by the trial court and the record made to conform to the truth. If anything material to either party is omitted from the record or is misstated therein, the trial court shall.

(1) either before or after the record is transmitted to the court on appeal, or

(2) upon the order of the court of appeal pursuant to the motion of a party or on its own initiative, correct the omission or misstatement and if necessary certify and transmit a supplemental record. *Incompleteness or inadequacy of the record shall not constitute a ground for dismissal of the appeal or preclude review on the merits.*" (Emphasis added.)

■ The intent of the rule is to provide a method whereby the parties or the appellate court may correct mistakes or omissions in the record following the certification of the record. We do not believe the intent of the rule is to shift, from appellant to the appellate court, the duty to provide an adequate record for review. The rule is not meant to permit an appellant to raise an issue in his brief and then leave it to the appellate court to order up the necessary record to review the issue. In the case at bar this Court could order the trial court to

review its records and determine whether or not this instruction was, in fact, tendered in writing to the court. We choose not to do so. The use of Ind.R.App.P. 7.2(C) is to be limited to those circumstances it was intended to cure. It is not to be used as a substitute for the duties clearly placed on an appellant by the other portions of Ind.R.App.P. 7.2.

Due to the nature of this holding, and in the interests of our policy to adjudicate on the merits, we will assume *arguendo* the instruction was, in fact, tendered in writing. The instruction, as cited in appellant's brief, stated:

### "CIRCUMSTANTIAL EVIDENCE

"The Indiana Supreme Court has announced the rule that where the evidence of guilt before the jury is entirely circumstantial, special rules are established for the jury's guidance. It is not enough that the circumstances be consistent with the hypothesis of guilt; they must be of so conclusive character, and point so surely and unerringly to the guilt of the accused, as to exclude every reasonable hypothesis of innocence."

■ The appellate review of the propriety of refusing to give a tendered jury instruction is governed by a process outlined in *Richey v. State* (1981), Ind., 426 N.E.2d 389. This Court must first determine whether the instruction is a correct statement of the law. The instruction was taken verbatim from *Ball v. State* (1980), Ind. App., 406 N.E.2d 305. This statement is a correct statement of the law insofar as the trial court is concerned. *See Spears v. State* (1980), 272 Ind. 634, 401 N.E.2d 331, reh'g granted, 272 Ind. 647, 403 N.E.2d 828.

The second step is to determine whether there is evidence in the record to support the giving of the instruction. Appellant's argument fails at this step. His tendered instruction is proper only when the evidence is wholly circumstantial. *Roarks v. State* (1983), Ind., 448 N.E.2d 1071. The statements given by appellant to the five

witnesses were in the form of admissions of actual participation. The statements constitute direct evidence of guilt. Thus the evidence was not wholly circumstantial.

■ Appellant disputes the direct evidence nature of his statements. Rather, he suggests the statements were meant to frighten others and gain their respect. Direct evidence of a crime includes the confession and admissions of the accused. *Evans v. State* (1927), 199 Ind. 55, 155 N.E. 203. We find the statements were direct evidence and thus the trial court did not err in refusing to give the tendered instruction.

Appellant next raises a variety of issues concerning the *voir dire* of the jury. The State had filed a second count against appellant alleging murder for hire and sought the death penalty. The court conducted what has become known as the "death qualifying" *voir dire* premised upon *Witherspoon v. Illinois* (1968), 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 and *Adams v. Texas* (1980), 448 U.S. 38, 100 S.Ct. 2521, 65 L.Ed.2d 581.

The jury did not recommend the imposition of the death penalty. We found, under similar circumstances in *Johnson v. State* (1982), Ind., 442 N.E.2d 1065, any error on this issue was harmless.

Appellant argues the *Adams* based *voir dire* operated to excuse for cause jurors on grounds equal to those used by the State in its peremptory challenges. Thus he argues the State was provided several additional peremptory challenges. This he contends was a violation of due process and equal protection. He cites no authority for this proposition.

■ We find no merit in appellant's contention. Under appellant's argument, once the State had exhausted its allotted peremptory challenges the court would be precluded from excusing for cause a juror under the *Adams* rationale. This would, of course, be absurd. Appellant has confused the very nature and purpose of the peremptory challenge and the challenge for cause. The latter has as its purpose the protection of the defendant's right to a fair and impartial jury. *Jacoby v. State* (1937), 212 Ind. 465, 8 N.E.2d 978.

■ A peremptory challenge is, however, exercised as a matter of favor and operates to reject and not select jurors. The peremptory challenge operates as a tactical tool the use of which is governed by trial counsel's feel for the nature of the case. *Jeffers v. United States* (1978), 451 F.Supp. 1338. We find excusing jurors for cause under the *Adams* standard is not the same as providing the State with additional peremptory challenges. Thus there was no violation of appellant's due process and equal protection rights.

Appellant contends a "death qualified" jury is more conviction prone. He cites to four law review articles as scientific proof of this fact. These articles are all at least ten years old. Last year we rejected this argument in *Burris v. State* (1984), Ind., 465 N.E.2d 171. The studies presented by appellant shed no new light on the issue. We reaffirm our holding in *Burris* on this issue.

Appellant argues the trial court erred when it gave instruction number sixteen. The instruction reads as follows:

"You are instructed that in doing your duty as a juror in this case, that you may call upon all of your experiences in life in determining the evidence in this case. There is nothing mysterious or fanciful about the criminal justice system in this country and it is presumed that you, the jury, will not check your common sense at the courtroom door but will use such common sense in determining the guilt or the innocence of the Defendant herein.

You are further instructed that in determining the criminal responsibility of the Defendant herein, if any, that you are the moral conscience of our society and must take into account all the facts and circumstances in this case in order to determine the Defendant's guilt or innocence."

Appellant specifically objected to the last paragraph. He contends this phrase misled the jury into concluding they were to be

guided by emotion and morality and not by the law and the evidence. He additionally maintains the instruction was inconsistent with another which admonished the jury to base its decision on the evidence and the law. He concludes in the face of these inconsistent instructions this Court should reverse his conviction as we cannot determine which instruction guided the jury.

The State argues the instruction was a general admonishment to the jury to do its duty. The State maintains that the jury is, in fact, the moral conscience of society. It suggests the law, which the jury does determine in Indiana, is but the embodiment of the moral conscience of our society.

■■■■■ The law requires a reversal if the decision may have been based upon an erroneous instruction or if the instruction was inconsistent and calculated to mislead the jury. *Hardy v. State* (1982), Ind.App., 442 N.E.2d 378. We do not believe the instruction was erroneous or inconsistent. While research does not reveal this particular instruction has been approved previously by this Court, it is clear the phrase does equate with our belief as to what the term "the law" means. The jury is to determine the law and in doing so they are, in fact, the moral conscience of our society. *See* 2 W. Blackstone, Commentaries, Chapter 23, 380–381. The instruction was in the nature of a general admonition to the jury to do its duty and no error flowed from the instruction.

Appellant contends the court erred when it gave instruction number fourteen. The instruction reads:

"You are instructed that the doctrine of reasonable doubt applies only to the ultimate question of the Defendant's guilt or innocence and the essential facts which establish it, and the mere fact that some subsidiary matters are but imperfectly proved does not make it the duty of the jury to acquit, if the ultimate question of the Defendant's guilt is established to your satisfaction beyond a reasonable doubt.

All the material allegations of the information must have been proved by the evidence beyond a reasonable doubt before you would be warranted in convicting the Defendant. If any one of the material allegations has not been so proved it would be your duty to acquit. If all the material allegations of the information have been so proved, it is your duty to convict the Defendant."

■■■■■ Appellant did not object at trial to the instruction. Failure to do so results in the waiver of any error predicated on the giving of the instruction. *Napier v. State* (1983), Ind., 445 N.E.2d 1361. However, he now asserts the giving of the instruction was fundamental error, citing *Reynolds v. State* (1984), Ind., 460 N.E.2d 506.

■■■■■ Appellant's claim is based on the last sentence of the instruction. He contends the instruction removed from the jury the right to determine the law as they were limited to the law provided in the information. In instruction seventeen the jury was informed it had a right to determine the law and the facts which would govern its verdict. This does not mean the jury is free to ignore the law or make new law. In determining the law the jury must stay within the law as it exists; otherwise, the verdict would be contrary to law. *Beavers v. State* (1956), 236 Ind. 549, 141 N.E.2d 118.

■■■■■ Appellant contends the trial court erred when it failed to *sua sponte* give an instruction on the weight to be given to a confession. In the State's case-in-chief it introduced evidence of a custodial statement made by appellant. In the statement appellant admitted making incriminating statements to the various witnesses.

Appellant maintains the trial court was under a mandatory duty to instruct the jury concerning the weight to be given to appellant's statements. Appellant failed to request such an instruction. Appellant's failure to tender this particular instruction has been held to result in a waiver of the issue. *Apple v. State* (1973), 158 Ind.App. 663, 304 N.E.2d 321.

Appellant argues we should analyze the problem from the perspective of fundamental error. *Grey v. State* (1980), 273 Ind. 439, 404 N.E.2d 1348 dealt with a similar argument. The defendant had tendered two instructions regarding the weight to be given a defendant's confession. The trial court refused both instructions but did give a general instruction regarding the weighing of evidence and the judging of witness credibility. We found in *Grey* the judge was required to specifically instruct the jury on the weight to be given to the confession. However, we found the error to be harmless. We based that conclusion on the nature of the general instructions given, the extensive nature of the evidence against the defendant introduced apart from the statement and the unpersuasive nature of appellant's evidence that the statement was not voluntarily given.

In the case at bar the court did give comparable general instructions. Secondly, five separate witnesses testified as to the admissions of appellant. These persons were, with one exception, the same persons appellant named in his statement. Lastly, appellant offered no evidence that the statement given was anything other than a voluntary statement. Under the reasoning in *Grey* we find the error to be harmless. Thus we find no fundamental error.

■■■ Appellant maintains the trial court erred when it permitted the State to make certain statements during the *voir dire* and during closing arguments to the jury. Appellant did not object to these statements when they were made. Failure to object to prosecutorial comments in a timely fashion results in the failure to preserve the alleged error for appellate review. *Roose v. State* (1983), Ind., 449 N.E.2d 594.

Appellant again asks this Court to review the alleged error under the fundamental error doctrine. Applying our standards to the statements, we find no reversible error. We also note that if the fundamental error doctrine is to continue to have any meaning it cannot become a ruse to circumvent the necessity of timely objecting to

alleged error during the trial. Timely objections provide the trial court with the opportunity to correct the error if one exists.

■■■ Appellant argues the court erred when it gave an instruction defining the phrase "deadly weapon." Appellant maintains the only issue at trial was the identity of the decedent's assailant. Appellant contends the instruction confused and misled the jury. Additionally, he urges this Court to consider prejudicial impact upon the jury of being reminded of the brutal nature of the crime.

The State contends the instruction was unnecessary but not prejudicial. It contends the instruction was merely surplusage and wholly harmless. In *Underhill v. State* (1981), Ind., 428 N.E.2d 759, we find an analogous situation. We held in *Underhill* the giving of an instruction on attempted escape was improper when the sole evidence presented was to the actual occurrence of the escape. However, we also found the instruction was surplusage and did not warrant a reversal. *See also McNary v. State* (1981), Ind., 428 N.E.2d 1248 for a similar result.

We find the instruction in the case at bar was a correct statement of the law concerning deadly weapons. Thus the instruction could not confuse the jury. The instruction was, however, unnecessary in light of the facts of the case. Under the rationale of *Underhill*, we hold the instruction was surplusage and the giving of the instruction was harmless error.

■■■ Appellant was initially charged on April 6, 1982, with Count I, Murder. Appellant then filed a motion for early trial which was granted. Trial was set to commence on December 6, 1982. On November 30, 1982, the State filed Count II alleging Murder for Hire. The court then conducted a hearing on appellant's motion to dismiss Count II. The court denied the motion and then granted appellant's motion for continuance. At the hearing the court heard evidence concerning the events which prompted the filing of Count II.

During its investigation the police had learned from two witnesses that appellant had indicated he was to be paid for the murder of the decedent. The State chose not to file murder for hire charges based upon this information. Shortly before November 30, 1982, appellant's cell mate, Donald Runnion, informed the police that appellant had told him the murder was committed on a for hire basis. Following the receiving of this information the State filed the additional charge.

Appellant now contends the trial court erred when it refused to grant his motion to dismiss Count II. He contends the filing of Count II was an act of prosecutorial vindictiveness. He argues there was no new evidence to support the filing of the count but rather only cumulative evidence. He alleges two prejudicial errors flowed from the court's permitting the filing of Count II.

First, he was denied his right to an early trial. Secondly, the filing of the charge resulted in the changing of the *voir dire* procedure from the method customarily used in a criminal case to that required in a capital case. This, he contends, resulted in an inquiry into juror attitudes toward sentencing and the removal of jurors for attitudes not consistent with the requirements of *Adams.*

We hold it was not prosecutorial vindictiveness for the prosecutor to file Count II based upon the information the prosecutor had before him. Thus the nature of the *voir dire* would change as it must under the law.

As to the remaining question concerning the timing of the filing of Count II, appellant cites a variety of federal and state cases on the topic of prosecutorial vindictiveness. These cases, for the most part, are concerned with the actions of a prosecutor following an attempt by the criminal defendant to exercise a particular constitutional right. Among the cases cited are *Blackledge v. Perry* (1974), 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 and *Cherry v. State* (1981), 275 Ind. 14, 414 N.E.2d 301

(Pivarnik, J., dissenting in opinion in which Givan, C.J., concurs).

*Blackledge, Cherry* and the other cases cited by appellant are not on point with the case at bar. They deal with the refiling of charges and not with the filing of additional charges. *United States v. Goodwin* (1982), 457 U.S. 368, 102 S.Ct. 2485, 73 L.Ed.2d 74 and *Bordenkircher v. Hayes* (1978), 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604 are cases dealing with the issues arising from a pretrial decision to modify the charges against a defendant.

In both cases the Supreme Court upheld the actions of the prosecutor in either filing additional charges or in filing enhanced charges following the attempt of a defendant to exercise a constitutional right. The court found in *Goodwin* there was no presumption of prosecutorial vindictiveness when enhanced charges are filed following a defendant's assertion of his right to a jury trial.

The appellant has not shown that the charging decision was motivated by a desire to punish appellant for doing something the law allowed him to do. The additional charge was one the State had a legitimate right to file. The fact the State waited until the additional corroborative evidence came forth does not equate with misconduct. The trial court did not err in denying the motion to dismiss.

Appellant maintains the trial court erred when it admitted, over objection, certain physical evidence. He first objects to the admission of eight color photographs of the victim. The majority of these are pre-autopsy photographs showing the entrance and exit wounds. The others show the body as it was found on the floor of the office. These depict the location and condition of the body as it was found. Appellant did not object to a series of black and white photographs of the body taken at the scene. Essentially he argues these photographs covered the facts about which the witnesses testified. Thus he argues the color photographs were cumulative, irrelevant and unduly prejudicial.

The trial court has wide discretion in making determinations as to the admission of photographs of a murder victim. Absent an abuse of that discretion, its ruling on the matter will not be reversed. *Reynolds, supra.* It is incumbent on the appellant to clearly show the tendency of the photographs to improperly influence the jury. *Akins v. State* (1982), Ind., 429 N.E.2d 232.

Six of the photographs were taken away from the scene of the crime at a hospital prior to the autopsy. The photographs simply indicate the location of the entrance and exit wounds. These photographs were properly admitted to support the testimony of two State witnesses. We find no error in the admission of these photographs.

The other two photographs depicted the body as it was found. The photographs were repetitious of the black and white photographs. While acknowledging there is a line between permissibility and impermissibility in this area, we do not believe these photographs crossed that line. The photographs were relevant to show the condition of the body at the time it was found. The photographs were properly admitted to support the testimony of a paramedic who was one of the first persons on the scene. The paramedic testified as to his observation of the condition of the victim. The photographs vividly portrayed the testimony of the paramedic. The photographs were thus relevant. We find no imbalance between the relevancy of the evidence and its tendency to improperly influence the jury.

Appellant also objects to the introduction of three unused handgun cartridges. Appellant argues the cartridges are not identical to those used in the commission of the crime. He contends their relevancy to the issues at trial was thus remote and their admission was highly prejudicial.

Spent casings and bullets were recovered from in and around the body of the decedent. While no gun was introduced as the murder weapon, appellant had told some of the witnesses that he had shot Devine with a .357 Magnum. A firearms expert testified one of the bullets recovered was a .35 caliber bullet. He indicated the cartridge was manufactured by either the Federal Cartridge Company or by Remington and was capable of being fired from either a .357 Magnum or a .38 caliber handgun.

During the testimony of the firearms expert, the three unused cartridges were introduced. These cartridges were all of slightly different construction and yet they were all compatible with either a .357 Magnum or a .38 caliber handgun. They were admitted during that portion of the expert's testimony where he discussed the capacity of different cartridges to be compatible with both a .357 and a .38.

Evidence is relevant, and thus admissible, if it tends to prove or disprove a material fact or sheds any light on the guilt or innocence of the accused. *Larkin v. State* (1979), 271 Ind. 469, 393 N.E.2d 180. These cartridges were relevant to assist the jury in thoroughly understanding the nature of the expert witness' testimony. They were items of demonstrative evidence. The trial court did not err in admitting them.

Appellant alleges a lack of sufficient evidence to support the verdict. He contends the statements made by him to the various witnesses merely created a suspicion of his guilt. He maintains the State's case consisted of equivocal and weak circumstantial evidence.

The Court does not reweigh the evidence nor judge the credibility of witnesses. *Rowan v. State* (1982), Ind., 431 N.E.2d 805; *Staton v. State* (1981), Ind., 428 N.E.2d 1203.

Five witnesses testified as to independent admissions by appellant of his involvement. In many of these statements appellant provided additional information concerning the circumstances surrounding the murder. Each of these circumstances fit within the pattern of the crime. We hold there was sufficient evidence to support the verdict.

Appellant maintains the trial counsel provided ineffective assistance of counsel by failing to withdraw from the case and testifying in behalf of appellant. One of the central issues at trial concerned how appellant could have known the precise sequence of wounds to the decedent if he were not the perpetrator of the crime. Cell mate Runnion testified appellant had explained to him the sequence of the shots, their location and their effect on the body. This information was in agreement with the theory developed by the police and the pathologist. This information was not released to the public prior to appellant's statement.

Appellate counsel contends trial counsel was in possession of this knowledge and transmitted it to appellant. He argues it was essential for the jury to be informed of this independent source of knowledge concerning the events of the crime. He argues it was incumbent on trial counsel to resign and provide that testimony. Appellant cites to Disciplinary Rule 5–102(A) which provides:

"If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm ought to be called as a witness on behalf of his client, he shall withdraw from the conduct of the trial and his firm, if any, shall not continue representation in the trial, except that he may continue the representation and he or a lawyer in his firm may testify in the circumstances enumerated in DR 5–101(B) (1) through (4).

The question thus presented is whether it was obvious to trial counsel that he ought to be called as a witness. The following testimony was offered by appellant to demonstrate his independent knowledge of the sequence of shots. During appellant's direct examination he was asked to explain the nature of his conversations with Runnion. The questions were posed by co-trial counsel and not by counsel who had been the source of the information.

"Q Okay. Would you tell us, please, what your relationship was with Mr. Runnion at the time he was in your cell block [sic]?

A It was just a friendly basis, you know. He would tell me things about his case and I would talk some about mine.

Q What do you recall telling him about your case?

A I recall saying things that my lawyer had said to me pertaining to it.

Q When you're talking about your lawyer, which one, if there is one, are you talking about?

A Mr. Zook.

Q I'll try. What types of things did you speak about with Mr. Zook concerning your case that you talked to Mr. Runnion about?

A I remember talking about the sequence of how Joe Devine was shot.

Q How did you know about that sequence?

A Mr. Zook had told me.

Q Do you know how Mr. Zook found out about that?

A No, I don't."

Later trial counsel called Fred Ihnken to testify. He offered the following testimony:

"Q All right. Gene, what's your name again?

A Fred Ihnken.

Q Excuse me, Fred. And where do you work now?

A I am unemployed.

Q What was your prior occupation?

A Police officer with the Elkhart Police Department.

Q All right. Do we have a working relationship here together on this case?

A Yes, we do.

Q What is that?

A I'm assisting you in the investigation of the present homicide case.

Q In this case?

A In this case.

Q   Gene, did there come a time when you talked to people involved with the case—I'll ask you about this specifically—with the medical examiner—

A   (Interrupting)  Yes, there was.

Q   (Continuing)—in this case?  And did we then have a conversation about your theory regarding the number and order of shots?

A   Yes, we did.

Q   And did your conclusion or your theory about the number and order of shots—was that substantially similar to what the state has said so far in this trial?

A   At this present time, that is correct."

These two sets of testimony, taken together, placed before the jury all the information appellate counsel contends the trial counsel could provide.  The testimony of trial counsel would thus have been cumulative.

█  The language of the Code of Professional Responsibility EC 5–10 (1984) provides, "It is not objectionable for a lawyer who is a potential witness to be an advocate if it is unlikely he will be called because his testimony would be merely cumulative ...."  Additionally, we note the analogous case of *Hodge v. State* (1976), 264 Ind. 377, 344 N.E.2d 293.  In *Hodge* defense counsel sought leave of the court to testify.  The court refused and the defendant alleged error.  We found the testimony was cumulative and thus if there was error it was harmless.  We hold testimony of a cumulative nature does not rise to the level to make it obvious to counsel that he ought to withdraw and testify.

Lastly, appellant contends he was denied effective assistance of counsel based upon alleged errors in the conduct of the trial.  The claimed errors consist of the failure to object to certain leading questions, the failure to object to a prejudicial question, the failure to object to certain remarks made by the prosecutor and the failure to have hearsay evidence, which was introduced following a sustained objection, struck from the record.

"In addressing the issue of inadequacy of counsel, this Court indulges a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.  *Elliott v. State,* (1984) Ind., 465 N.E.2d 707.  Appellant must show that his counsel made errors so serious that he was not functioning as counsel guaranteed by the Sixth Amendment of the United States Constitution and that such deficient performance deprived him of a fair trial.  *Id.* at 710, citing *Strickland v. Washington,* (1984) — U.S. —, —, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693."  *Colbert v. State* (1984), Ind., 471 N.E.2d 1109.

█  Upon review of the alleged errors and the record, we find appellant has not overcome the strong presumption that counsel's conduct was within the wide range of reasonable professional assistance of counsel.  The alleged errors are primarily in the areas of tactics and strategy.  This Court does not second-guess trial counsel in these areas when it appears within the context of counsel's entire representation that the representation was adequate and effective.  *Augustine v. State* (1984), Ind., 461 N.E.2d 101.

█  The record reveals trial counsel provided a vigorous defense.  He effectively examined witnesses, made timely objection and introduced evidence on behalf of appellant.  We cannot say appellant was deprived of a fair trial based upon these alleged errors.  Nor can we say any of the alleged errors were so serious that counsel was not functioning as guaranteed by the Sixth Amendment.

The trial court is in all things affirmed.

All Justices concur.