**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



**FILED**
Sep 03 2013, 5:30 am

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**VINCENT M. CAMPITI**
Nemeth Feeney Masters & Campiti
South Bend, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**GARY R. ROM**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| ROBERT J. WININGS, | ) | |
| | ) | |
| Appellant-Petitioner, | ) | |
| | ) | |
| vs. | ) | No. 20A03-1301-PC-26 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Respondent. | ) | |

**APPEAL FROM THE ELKHART SUPERIOR COURT**
The Honorable George W. Biddlecome, Judge
Cause Nos. 20D03-1201-PC-4, 20D03-1201-PC-5

**September 3, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BRADFORD, Judge**

Appellant-Petitioner Robert J. Winings pled guilty to and was convicted of Class B felony dealing in methamphetamine and Class A felony dealing in methamphetamine within 1000 feet of a school. Winings sought post-conviction relief ("PCR"), arguing that the factual basis was insufficient to support his guilty plea for the Class A felony conviction. Winings also argues that he received ineffective assistance of trial counsel. Winings now appeals from the denial of his PCR petition. Concluding that Winings waived his challenge to the sufficiency of the factual basis to sustain his Class A felony conviction by failing to include the relevant documents in the record on appeal, and that Winings did not receive ineffective assistance of trial counsel, we affirm.

**FACTS AND PROCEDURAL HISTORY**[1]

On or about November 16, 2007, the State charged Winings under Cause Number 20D03-0711-FA-73 ("Cause No. FA-73") with Class A felony dealing in methamphetamine and Class D felony possession of chemical reagents or precursors with the intent to manufacture controlled substances. The charges included in Cause No. FA-73 arose from incidents that occurred at Winings's residence on November 13, 2007. David W. Newman served as defense counsel for Winings in the criminal proceedings that related to Cause No. FA-73.

On May 23, 2008, Winings was arrested after officers discovered an active

---

[1] Winings did not include numerous relevant documents in his submissions on appeal. As a result, some of the facts relating to the underlying criminal proceedings are derived from the post-conviction court's order denying Winings's request for relief and the probable cause affidavit relating to Cause Number 20D03-0805-FA-34.

methamphetamine lab in the back of his pick-up truck during a traffic stop. The lab emitted a strong smell of ammonia. The traffic stop occurred within 1000 feet of York Elementary School. During the traffic stop, Winings's passenger admitted to the officers that she and Winings had been manufacturing methamphetamine and that she was hiding methamphetamine in her private region. On or about May 23, 2008, the State charged Winings under Cause Number 20D03-0805-FA-34 ("Cause No. FA-34") with Class A felony dealing in methamphetamine within 1000 feet of a school. Newman also served as defense counsel for Winings in the criminal proceedings that related to Cause No. FA-34.[2]

On March 19, 2009, Winings pled guilty to Class B felony dealing in methamphetamine under Cause No. FA-73 and Class A felony dealing in methamphetamine within 1000 feet of a school under Cause No. FA-34. In exchange for Winings's plea, the State agreed to dismiss an unrelated Class D felony charge and agreed that the executed portion of Winings's sentence would be capped at forty years.[3] On April 23, 2009, Winings was sentenced pursuant to the terms of the plea agreement.[4] Winings did not file a direct appeal.

On December 30, 2011, Winings, by counsel, filed a PCR petition. The post-conviction court conducted evidentiary hearings on Winings's PCR petition on May 30,

---

[2] Newman also represented Winings in an unrelated third criminal case.

[3] Winings's sentences were required to be served consecutively because Winings committed the offense charged in Cause No. FA-34 while out on bond in Cause No. FA-74.

[4] Winings's sentence included five years of probation in addition to the forty-year executed sentence.

3

2012, and July 19, 2012. During these hearings, Winings, by counsel, presented argument in support of his petition. Newman also testified about his representation of Winings during the trial court proceedings. On December 28, 2012, the post-conviction court issued an order denying Winings's request for PCR. This appeal follows.

## DISCUSSION AND DECISION

Post-conviction procedures do not afford the petitioner with a super-appeal. *Williams v. State*, 706 N.E.2d 149, 153 (Ind. 1999). Instead, they create a narrow remedy for subsequent collateral challenges to convictions, challenges which must be based on grounds enumerated in the post-conviction rules. *Id.* A petitioner who has been denied PCR appeals from a negative judgment and as a result, faces a rigorous standard of review on appeal. *Dewitt v. State*, 755 N.E.2d 167, 169 (Ind. 2001); *Collier v. State*, 715 N.E.2d 940, 942 (Ind. Ct. App. 1999), *trans. denied*.

Post-conviction proceedings are civil in nature. *Stevens v. State*, 770 N.E.2d 739, 745 (Ind. 2002). Therefore, in order to prevail, a petitioner must establish his claims by a preponderance of the evidence. Ind. Post-Conviction Rule 1(5); *Stevens*, 770 N.E.2d at 745. When appealing from the denial of a PCR petition, a petitioner must convince this court that the evidence, taken as a whole, "leads unmistakably to a conclusion opposite that reached by the post-conviction court." *Stevens*, 770 N.E.2d at 745. "It is only where the evidence is without conflict and leads to but one conclusion, and the post-conviction court has reached the opposite conclusion, that its decision will be disturbed as contrary to law." *Godby v. State*, 809 N.E.2d 480, 482 (Ind. Ct. App. 2004), *trans. denied*. The post-conviction court is

4

the sole judge of the weight of the evidence and the credibility of the witnesses. *Fisher v. State*, 810 N.E.2d 674, 679 (Ind. 2004). We therefore accept the post-conviction court's findings of fact unless they are clearly erroneous but give no deference to its conclusions of law. *Id*.

## I. Sufficiency of Evidence to Support Factual Basis

Winings argues on appeal that the post-conviction court erroneously denied his PCR petition because the factual basis presented during the guilty plea hearing was insufficient to sustain his conviction for Class A felony dealing in methamphetamine within 1000 feet of a school.

> A court may not accept a guilty plea unless the court determines that a sufficient factual basis exists to support the plea. *Rhoades v. State*, 675 N.E.2d 698, 700 (Ind. 1996) (citing Ind. Code § 35-35-1-3). A factual basis may be established by relatively minimal evidence about the elements of the crime from which the court could reasonably conclude that the defendant is guilty. *Id*. A trial court's finding of an adequate factual basis is presumptively correct. *Id*. Additionally, the standard for a sufficient factual basis to support a guilty plea is less rigorous than that required to support a conviction. *Id*. at 702. "Reasonably concluding" that a defendant is guilty for purposes of a factual basis is not the same as concluding guilt beyond a reasonable doubt. *Id*.

*Graham v. State*, 941 N.E.2d 1091, 1098 (Ind. Ct. App. 2011). "On appeal from the denial of a petition for post-conviction relief, the burden is on the petitioner to provide a record adequate for review." *Lile v. State*, 671 N.E.2d 1190, 1193 (Ind. Ct. App. 1996). "Failure to do so has been found to be grounds for waiver of any alleged error based upon the absent material." *Cox v. State*, 475 N.E.2d 664, 667 (Ind. 1985) (noting that a criminal defendant has a duty to provide a proper record for appeal so that an intelligent review of the issues may

be made).

In the instant matter, our review of Winings's claim regarding the sufficiency of the factual basis to sustain his Class A felony conviction is frustrated by Winings's failure to include the transcript of the guilty plea hearing or the plea itself in the record on appeal. Winings does not claim that either the transcript or a copy of the plea was unavailable for submission to this court on appeal. In addition, the post-conviction court did not make any findings specifically relating to the testimony which made up the factual basis during the guilty plea hearing. As such, we are unable to review Winings's claim regarding the sufficiency of the factual basis to sustain his guilty plea and Class A felony conviction. Because Winings had the burden to provide the court with an adequate record for review, and Winings has failed to do so, we conclude that Winings has waived this argument on appeal. *See Cox*, 475 N.E.2d at 667; *Lile*, 671 N.E.2d at 1193.

## II. Ineffective Assistance of Counsel

The right to effective counsel is rooted in the Sixth Amendment to the United States Constitution. *Taylor v. State*, 840 N.E.2d 324, 331 (Ind. 2006). "'The Sixth Amendment recognizes the right to the assistance of counsel because it envisions counsel's playing a role that is critical to the ability of the adversarial system to produce just results.'" *Id.* (quoting *Strickland v. Washington*, 466 U.S. 668, 685 (1984)). "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper function of the adversarial process that the trial court cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686.

6

A successful claim for ineffective assistance of counsel must satisfy two components. *Reed v. State*, 866 N.E.2d 767, 769 (Ind. 2007). Under the first prong, the petitioner must establish that counsel's performance was deficient by demonstrating that counsel's representation "fell below an objective standard of reasonableness, committing errors so serious that the defendant did not have the 'counsel' guaranteed by the Sixth Amendment." *Id*. We recognize that even the finest, most experienced criminal defense attorneys may not agree on the ideal strategy or most effective way to represent a client and therefore, under this prong, we will assume that counsel performed adequately and defer to counsel's strategic and tactical decisions. *Smith v. State*, 765 N.E.2d 578, 585 (Ind. 2002). Isolated mistakes, poor strategy, inexperience, and instances of bad judgment do not necessarily render representation ineffective. *Id*.

Under the second prong, the petitioner must show that the deficient performance resulted in prejudice. *Reed*, 866 N.E.2d at 769. A petitioner may show prejudice by demonstrating that there is "a reasonable probability (*i.e.* a probability sufficient to undermine confidence in the outcome) that, but for counsel's errors, the result of the proceeding would have been different." *Id*.

A petitioner's failure to satisfy either prong will cause the ineffective assistance of counsel claim to fail. *See Williams*, 706 N.E.2d at 154. Stated differently, "[a]lthough the two parts of the *Strickland* test are separate inquires, a claim may be disposed of on either prong." *Grinstead v. State*, 845 N.E.2d 1027, 1031 (Ind. 2006) (citing *Williams*, 706 N.E.2d at 154).

7

Winings challenges the post-conviction court's determination that Newman was not ineffective. Specifically, Winings claims that Newman was ineffective for failing to tell him about certain statutorily-defined defenses that could have potentially been available to him in Cause No. FA-34. Winings argues that he would not have pled guilty if Newman would have informed him of the defenses, which he claims would have applied to his case.

Indiana Code section 35-48-4-1.1 provides that a person who knowingly or intentionally manufactures, finances the manufacture of, delivers, or finances the delivery of methamphetamine commits Class B felony dealing in methamphetamine. The offense is elevated to a Class A felony if the act occurs within 1000 feet of a school. Ind. Code § 35-48-4-1.1(b)(3)(B). Indiana Code subsections 35-48-4-16(b) and (c) provide that it is a defense to the enhancement to a Class A felony if the individual was only within 1000 feet of the school briefly, no person under the age of eighteen was present within 1000 feet of the school, or the individual was only within 1000 feet of the school at the request or suggestion of law enforcement. These defenses, however, apply only to the possession, delivery, or financing the delivery of methamphetamine and do not apply to the manufacture of methamphetamine. Ind. Code § 35-48-4-16(d).

Again, in the instant matter, Winings pled guilty to the elevated Class A felony. In claiming that Newman was ineffective for failing to inform him of the defenses listed in Indiana Code subsections 35-48-4-16(b) and (c), Winings argues that there were no children present when he was pulled over in front of York Elementary, and that he was only in the defined area briefly. Winings also argues that he was only present in the defined area at the

request or suggestion of law enforcement.

During the evidentiary hearing, Newman testified that his general practice is to review his cases to determine if there are any defenses that are available to his clients, and then to discuss any potential defenses with said clients. Newman testified that he followed this general practice with regard to Winings. Newman stated that he believed that he had discussed all potentially available defenses with Winings, although he could not remember talking to Winings specifically about Indiana Code subsections 35-48-4-16(b) and (c). Newman also testified that he had discussed Winings's potential defenses, including those listed in Indiana Code subsections 35-48-4-16(b) and (c), with the deputy prosecutor assigned to prosecute the charges levied against Winings.

Newman expressed concern about whether the defenses would have applied to Winings's case because the State could likely prove that, while there might not have been children present at the school, there were children present within 1000 feet of the school at the time Winings was pulled over. Newman also expressed concern about the applicability of the defenses because it would be difficult, if not impossible, to prove at trial that Winings was only in the area at the request or suggestion of law enforcement. Winings does not argue that he could not have taken a different route that would not have passed the school when he left the property, at which he had been manufacturing methamphetamine, in an attempt to avoid getting caught by the police. In addition, Newman indicated that it was unclear whether the defenses would have applied to Winings's case because Winings was alleged to have been manufacturing methamphetamine, not possessing, delivering, or financing the

delivery of the drug.

Newman also outlined the other actions he took with regard to the specific charges levied against Winings. Specifically, Newman testified that he met with Winings, either in person or by telephone, on thirteen different occasions. Newman conducted discovery in all three criminal matters, reviewed the discovered materials with Winings, and conducted depositions. In Cause No. FA-34, Newman filed a motion to suppress the evidence stemming from the traffic stop, which he indicated that he "candidly thought was our best defense in the case." Tr. p. 74. Newman discussed the potential penalties that Winings faced if convicted of all charges and explained that the sentences were considered "mandatorily consecutive" because Winings committed the criminal act alleged in Cause No. FA-34 while out on bond for Cause No. FA-73. Tr. p. 64. Newman also negotiated a plea deal with the State, which he believed represented the best possible outcome for Winings given the State's evidence against him.

Again, the record demonstrates that Newman conducted a thorough review of Winings's cases, including the possible penalties that Winings could face if convicted as well as the possible defenses that Winings could raise at trial. Newman discussed the potential penalties and defenses with Winings. Newman considered the applicability of the defenses outlined in Indiana Code subsections 35-48-4-16(b) and (c), although he could not specifically remember discussing these potential defenses with Winings. Newman stated that, while it was possible that he did discuss these potential defenses with Winings, it was also possible that he did not. Newman made tactical decisions in his attempts to garner the

best possible outcome for Winings, including filing a motion to suppress the evidence stemming from the traffic stop, which, again, he "candidly thought was our best defense in the case." Tr. p. 74. Newman also managed to negotiate a plea deal by which the State agreed to reduce one of the two Class A felony charges that Winings was facing to a Class B felony; cap the executed portion of Winings's sentence, which could potentially have exceeded one hundred years if Winings had been convicted of each of the charged offenses, to forty years; and dismiss a felony charge that was charged under an unrelated cause number.

Newman's testimony regarding his strategic and tactical decisions as well as the steps he took to insure that Winings receive a favorable outcome, lead us to the opinion that Newman performed adequately. *See Smith*, 765 N.E.2d at 585. As such, we conclude that Winings cannot establish that he suffered ineffective performance of trial counsel because he has failed to demonstrate that Newman's performance was deficient. *See Reed*, 866 N.E.2d at 769 (providing that in order to prove a claim of ineffective assistance of counsel, petitioner must prove both prongs set forth in *Strickland*, *i.e.*, defective performance and prejudice); *see Grinstead*, 845 N.E.2d at 1031 (providing that a claim of ineffective assistance of counsel can be disposed of on either prong).

The judgment of the post-conviction court is affirmed.

BAILEY, J., and MAY, J., concur.

11