## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Oct 06 2015, 8:30 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Craig Persinger
Marion, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Jodi Kathryn Stein
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| William M. Cox,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | October 6, 2015<br><br>Court of Appeals Case No.<br>27A04-1412-CR-579<br><br>Appeal from the Grant Superior Court<br><br>The Honorable Dana J. Kenworthy, Judge<br><br>Trial Court Cause No.<br>27D02-1306-FB-50 |

**Kirsch, Judge.**

[1] William M. Cox ("Cox") was found guilty by a jury of criminal confinement[1] as a Class B felony, battery[2] as a Class C felony, one count of strangulation[3] as a Class D felony, and domestic battery[4] as a Class A misdemeanor.[5] Cox appeals, raising the following restated issues for our review:

> I.   Whether sufficient evidence supported Cox's conviction for criminal confinement as a Class B felony. Specifically, was there evidence to prove beyond a reasonable doubt that Cox substantially interfered with the victim's liberty; and

> II.  Whether Cox's convictions for criminal confinement as a Class B felony, battery as a Class C felony, and strangulation as a Class D felony violated the actual evidence test under Indiana's Double Jeopardy Clause.

[2] We affirm in part, reverse in part, and remand with instructions.

## Facts and Procedural History

[3] In May of 2013, Cox and Terri Denton ("Denton") were in a relationship and lived together in a home owned by Denton in Upland, Indiana. On May 31,

---

[1] *See* Ind. Code § 35-42-3-3(b)(2).

[2] *See* Ind. Code § 35-42-2-1.

[3] *See* Ind. Code § 35-42-2-9.

[4] *See* Ind. Code § 35-42-2-1.3.

[5] We note that, effective July 1, 2014, a new version of these criminal statutes was enacted. Because Cox committed his crimes prior to July 1, 2014, we will apply the statutes in effect at the time he committed his crimes.

2013, Cox and Denton got into an argument, prompting Denton to leave for work early to get away from Cox. After Denton left her home, Cox called her phone repeatedly and followed Denton to her place of employment, where they had another argument prior to the start of Denton's shift.

[4] When Denton completed her shift later that evening at 11:00 p.m., she saw Cox pull into the parking lot. Cox appeared intoxicated, but Denton asked him to follow her home to continue to discuss their problems. Upon arriving home, Denton went to the master bathroom to use the restroom. Cox followed her into the restroom, announced that "I am going to teach you," *Tr.* at 185., grabbed Denton's throat, and forced her into the window behind the toilet. Cox pushed Denton into the window with such force that the window broke, leaving Denton with cuts and bruises across her back and down her arm. Denton screamed, causing Cox to put one hand around her throat and his other hand to cover Denton's nose and mouth. Denton was unable to breath at this time.

[5] Cox proceeded to throw Denton onto the bathroom floor, straddle her, and place both hands around Denton's throat as he yelled at her. Denton continued to scream and fight back, prompting Cox to cover her mouth and nose a second time while he tried to pin Denton's arms down with his legs. Denton was unable to breath and eventually lost consciousness.

[6] When Denton regained consciousness, she realized she had been moved from the master bathroom floor to her bedroom floor near the foot of the bed.

Denton tried to stand up, but was stopped when Cox placed his hands over her mouth and nose, inhibiting her ability to breathe a third time that evening. Cox told Denton that he would remove his hands if she stopped trying to scream. As he began to remove his hands, Denton tried to break a window to escape. Cox was able to stop Denton before she could break the window or escape and pinned her to the bed. He proceeded to wrap his hands around Denton's throat and cover her mouth and nose for a fourth time.

[7] Denton managed to break free from Cox's hold and attempted to run through the kitchen to the front door, but fell along the way scraping her legs in the process. Consequently, Cox was able to catch Denton and pin her to a reclining chair near the front door. Cox then placed his hands around Denton's throat and over her mouth and nose for the fifth time that evening. When Denton tried to fight back, Cox struck her head with his fists multiple times and split her lip open.

[8] Denton was again able to free herself from Cox. This time, she successfully ran out of the house and into her car. Cox followed Denton and jumped into the vehicle as she tried to back out of the driveway. Cox stopped the vehicle and turned it off before pinning Denton between the two front seats; he then wrapped his hands around her neck and covered her mouth and nose a sixth time. Fighting back, Denton was able to flee the vehicle and conceal herself in a patch of tall grass. Denton remained hidden for some time after she watched Cox return inside her home with the car keys.

[9]     When Denton was sure that Cox was asleep, she retrieved her car keys from the house. Unsure of where else to go, Denton decided to sleep in her car in the driveway. She went back inside her home the next morning after Cox was gone. Looking in the bathroom mirror, she was able to see her many injuries and documented them by taking pictures with her cell phone. In addition to having been rendered unconscious the previous evening, Denton suffered from a knot on her head, cuts to her left arm, bruises in the form of fingerprints on her right arm, and a split lip. Denton also had scratches and bruising in the form of a handprint on her neck, bruising to the side of her face and jaw, and scratches and bruising on her knees. Later that day, on June 1, 2013, Denton went to work where her daughter and co-workers observed her injuries. Two days later, on June 3, 2013, Denton went to the hospital and reported the incident.

[10]    On June 17, 2013, the State charged Cox with criminal confinement as a Class B felony, battery as a Class C felony, two counts of strangulation as Class D felonies, and domestic battery as a Class A misdemeanor. Cox proceeded to a trial by jury that began on October 28, 2014. On October 29, 2014, the jury found Cox guilty of criminal confinement as a Class B felony, battery as a Class C felony, one count of strangulation as a Class D felony (by applying pressure to the throat or neck), and domestic battery as a Class A misdemeanor; Cox was found not guilty of the second count of strangulation as a Class D felony (obstructing nose or mouth).

[11] On December 1, 2014, the trial court sentenced Cox to twenty years for Class B felony confinement; eight years for Class C felony battery; three years for Class D strangulation; and one year for Class A misdemeanor domestic battery. The confinement and Class C felony battery sentences were to be served concurrently but consecutive to the remaining sentences for an aggregate term of twenty-four years executed. Cox now appeals.

## Discussion and Decision

## I. Sufficiency of Evidence

[12] When we review the sufficiency of evidence to support a conviction, we do not reweigh the evidence or assess the credibility of the witnesses. *Cunningham v. State*, 870 N.E.2d 552, 553 (Ind. Ct. App. 2007). "We consider only the evidence most favorable to the verdict and the reasonable inferences that can be drawn from this evidence. We will not disturb the jury's verdict if there is substantial evidence of probative value to support it." *Fuentes v. State*, 10 N.E.3d 68, 75 (Ind. Ct. App. 2014). As the reviewing court, we respect "the jury's exclusive province to weigh conflicting evidence." *McHenry v. State*, 820 N.E.2d 124, 126 (Ind. 2005).

[13] Cox contends that there was insufficient evidence to support the jury's finding that he confined Denton. Specifically, Cox challenges the sufficiency of the evidence to prove that he substantially interfered with Denton's liberty. The jury was instructed that in order to convict Cox of criminal confinement, the State had to prove that he (a) knowingly or intentionally, (b) confined Denton

without her consent, and (c) the confinement resulted in serious bodily injury to Denton. *Final Instruction #5, Ex. Vol.* at 104. The jury was further instructed to use the following definition: "The term 'confine' is defined by law as meaning to substantially interfere with the liberty of a person." *Final Instruction #16, Ex. Vol.* at 109; *see* Ind. Code § 35-42-3-1. Cox admits Denton "may have been momentarily detained," but argues that her ability to escape several times and decision to sleep in her car outside her house when she was free to leave demonstrates that her liberty was not substantially interfered with by Cox. *Appellant's Br.* at 8. We disagree.

[14] Here, there was sufficient evidence to find that Cox, beyond the detainment that occurred when Denton was strangled, substantially interfered with her liberty on several occasions. Cox concedes that during the night in question, he "pinned Denton to the bed," "grabbed her and forced her into a reclining chair" as Denton headed to the door, and "straddled her between the car seats" after he stopped her car. *Id.* at 5. "The fact that the time involved was brief is not the determinative factor of 'substantial.' While time may be a factor, it is the type or nature of interference that is most significant." *Sammons v. State*, 397 N.E.2d 289, 294 (Ind. Ct. App. 1979). Based on Denton's testimony and Cox's own admissions in his brief, Denton tried to flee from Cox multiple times before she was successful in escaping. Therefore, we conclude that there was sufficient evidence for a reasonable trier of fact to find that Cox confined and substantially interfered with Denton's liberty.

## II.    Double Jeopardy

Article 1, Section 14 of the Indiana Constitution states that "No person shall be put in jeopardy twice for the same offense." Our Supreme Court has held that "Indiana's Double Jeopardy Clause was intended to prevent the State from being able to proceed against a person twice for the same criminal transgression." *Richardson v. State*, 717 N.E.2d 32, 49 (Ind. 1999). To determine whether multiple convictions are permissible, we must use a two-part test which considers the statutory elements and the actual evidence. *Id*. Cox contends that his convictions of criminal confinement as a Class B felony, battery as a Class C felony, and strangulation as a Class D felony violated the actual evidence test. His double jeopardy claim can be broken down into two separate parts: 1) that his criminal confinement and battery charges were improperly enhanced by the same serious bodily injury; and 2) that the same facts and evidence were used to support his convictions for criminal confinement and strangulation. We address each in turn.

When such a claim is presented to a reviewing court, "the actual evidence presented at trial is examined to determine whether each challenged offense was established by separate and distinct facts." *Id.* at 53. Moreover, the court may consider the charging information, jury instructions, and arguments of counsel when making its determination. *Lee v. State*, 892 N.E.2d 1231, 1234 (Ind. 2008). "Multiple convictions do not violate Indiana's Double Jeopardy Clause if they logically could have been based on the same facts, but in light of the evidence, the instructions, the charges, and the argument of counsel, there is

no reasonable possibility that the jury actually used exactly the same set of facts to establish both convictions." *Id*. at 1232.

[17] At issue in the actual evidence analysis of the criminal confinement and battery convictions is whether there is a reasonable possibility that the evidence used by the fact-finder to establish the serious bodily injury element for the criminal confinement conviction may also have been used to establish the serious bodily injury element for the battery conviction. *Hines v. State*, 30 N.E.3d 1216, 1222 (Ind. 2015). Specifically, we must consider whether there is a reasonable possibility that the jury used Denton's loss of consciousness as the serious bodily injury for each of the above mentioned convictions.

[18] "Although there was evidence presented at trial that could have supported" a finding that serious bodily injury occurred during both the confinement offense and the battery offense, "the inquiry does not end there." *Id*. "Indiana's Double Jeopardy Clause requires charges to be prosecuted 'in a manner that insures that multiple guilty verdicts are not based on the same evidentiary facts.'" *Lee*, 892 N.E.2d at 1235 (quoting *Richardson*, 717 N.E.2d at 53 n.46). "If there is a reasonable possibility that the jury mixed the evidence from" Denton's loss of consciousness during the criminal confinement offense to establish serious bodily injury for the battery offense, both enhanced convictions cannot stand because the facts establishing serious bodily injury for criminal confinement would also establish serious bodily injury for battery. *Hines*, 30 N.E.3d at 1222. "'Reasonable possibility' turns on a practical

assessment of whether the jury *may have latched* on to exactly the same facts for both convictions." *Lee*, 892 N.E.2d at 1236 (emphasis added).

[19] In this case, the State included both unconsciousness and extreme pain when it charged Cox with criminal confinement and battery. Additionally, the final jury instructions listed unconsciousness and extreme pain as the serious bodily injury for both the criminal confinement offense and the battery offense without clarifying to the jury that the same injury could not be used for each of the two offenses. The instructions left open the reasonable possibility that the jury could use the same evidence to establish serious bodily injury for both criminal confinement and battery. *Hines*, 30 N.E.3d at 1223.

[20] During closing argument, the State clearly tied unconsciousness to the criminal confinement offense:

> We also talked about in jury selection how unconsciousness within itself under the law qualifies as serious bodily injury, so if you believe Terri that she says 'And then I blacked out, and then I woke up in front of the bed.' She showed you using the exhibits where she woke up then serious bodily injury has been satisfied.

*Tr.* at 454. The State proceeded to focus on the facts surrounding Denton's loss of consciousness when it discussed the battery resulting in serious bodily injury:

> He would keep grabbing her and if she screamed he would put his hand over her face to stifle her screaming. That's touching someone in a rude, insolent or angry manner, and it resulted in serious bodily injury. The passing out on the floor or even extreme pain under, under the definition. Terri got up there and told you

she felt like she was going to explode. She's gasping for air. She couldn't get air and was going to explode.

*Id*. at 455. It is possible that the jury followed the State's argument and tied the unconsciousness to the criminal confinement offense and the extreme pain to the battery offense; however, without specifying for the jury what evidence supported what charge and failing to instruct them that the same evidence could not be used twice, it is also reasonably possible that the jury established the serious bodily injury element for both the criminal confinement conviction and the battery conviction with the same piece of evidence, namely the loss of consciousness. The State failed to draw a line where the serious bodily injury from the confinement ended and the serious bodily injury from the battery began. Confusion was added by the fact that the charging information and jury instructions listed both loss of consciousness and extreme pain as the serious bodily injuries for the battery and criminal confinement charges.

[21] Based on the charging information, the jury instructions, and the arguments of counsel, we find a reasonable possibility that the evidence of the loss of consciousness was used by the jury to establish the serious bodily injury element of battery and criminal confinement. Consequently, under the actual evidence test, Cox was twice punished for the same injury in violation of Article 1, Section 14 of the Indiana Constitution. Moreover, the other injuries Cox inflicted upon Denton were used to support the domestic battery conviction. Accordingly, we remand to the trial court with instructions to vacate the Class C felony battery conviction and sentence.

[22] Next, Cox contends that the same evidence was used to convict him of strangulation and confinement. We disagree. The conflict between Denton and Cox began in the master bathroom when he shoved her into the window. Denton testified that Cox then threw her onto the bathroom floor, straddled her, and tried to restrain her arms with his legs. This evidence supports the finding that Cox confined Denton. However, Cox then took the additional action of placing his hands around her neck and covering her nose and mouth. This resulted in Denton losing consciousness. Combined, this evidence supported Cox's conviction for Class B felony criminal confinement. In addition to the incident in the master bathroom, Denton testified that Cox placed his hands around her throat on multiple occasions that night which impeded her circulation and ability to breath. This separate evidence supports Cox's conviction of strangulation as a Class D felony.

[23] The actual evidence used to convict Cox of criminal confinement was different from the evidence required to convict him of strangulation. Cox's convictions for criminal confinement and strangulation did not violate the prohibition against double jeopardy. Accordingly, both convictions were proper and vacating the battery conviction will not require that Cox be resentenced as the battery sentence was ordered to run concurrent with the criminal confinement sentence.

[24] Affirmed in part, reversed in part, and remanded with instructions.

[25] Najam, J., and Barnes, J., concur.